NELSON, CHAIRMAN OF THE STATE TAX COMMISSION, ET AL. *v.* SEARS, ROEBUCK & CO.

No. 255.   Argued January 13, 14, 1941.—Decided February 17, 1941.

*Mr. John E. Mulroney,* Assistant Attorney General of Iowa, with whom *Mr. John M. Rankin,* Attorney General, was on the brief, for petitioners.

*Mr. Joseph G. Gamble,* with whom *Messrs. Charles Lederer, Ralph L. Read,* and *Bert L. Klooster* were on the brief, for respondent.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

This case involves the constitutionality of the Iowa Use Tax (Ia. Code 1939, §§ 6943.102–6943.125) as applied to respondent's mail order business conducted directly between customers in Iowa and respondent's mail order houses located outside Iowa. The Supreme Court of Iowa, in a five to four decision, held for respondent

on that issue.    228 Ia. 1273; 292 N. W. 130.    We granted certiorari because of the importance of the constitutional question presented.    Jud. Code § 237 (b); 28 U. S. C. § 344 (b).

The Iowa Use Tax is complementary to the Iowa Retail Sales Tax.    Ia. Code 1939, §§ 6943.074, *et seq.*    It is a tax on the use in Iowa of tangible personal property at the rate of two per cent of the purchase price.[1] "Use," so far as material here, is defined as "the exercise by any person of any right or power over tangible personal property incident to the ownership of that property."    § 6943.102.    While the tax is imposed on "every person using such property within this state until such tax has been paid" (§ 6943.103), it is further provided (§ 6943.109) that every "retailer maintaining a place of business in this state and making sales of tangible personal property for use in this state . . . shall at the time of making such sales, whether within or without the state, collect the tax imposed by this act from the purchaser . . ."    By § 6943.112 the tax constitutes a "debt owed by the retailer" to the state.[2]    And if the retailer

---

[1] The Use Tax Act provides in § 6943.103,

"An excise tax is hereby imposed on the use in this state of tangible personal property purchased on or after the effective date of this act (April 16, 1937) for use in this state, at the rate of two per cent of the purchase price of such property.    Said tax is hereby imposed upon every person using such property within this state until such tax has been paid directly to the county treasurer, to a retailer, or to the commission as hereinafter provided."

The sales tax is a two per cent tax on gross receipts from sales of tangible personal property sold at retail in the state to consumers or users.    § 6943.075.    So far as material here, the Use Tax need not be paid on property where a tax is required to be paid under the Sales Tax Act.    § 6943.104.

[2] The retailer must also make quarterly returns.    § 6943.113.    Penalties are imposed for delay in filing returns (§ 6943.118), for failure to do so or for failure to furnish data required by the commission.    § 6943.120.

fails to collect the tax, etc., his retailer's permit (§ 6943.084) may be revoked; and in case of a foreign corporation, its permit to do business in the state as well. § 6943.122.

Respondent is a New York corporation authorized since 1928 to do business in Iowa. It has various retail stores there. It pays the tax on sales made at those stores. It also pays the tax on orders placed at those stores, though shipment is made direct to the purchaser from one of respondent's out of state branches. But it has refused to collect the tax on mail orders sent by Iowa purchasers to its out of state branches and filled by direct shipments through the mails or a common carrier from those branches to the purchasers.[3] On threat of petitioners to revoke respondent's permit because of such refusal, respondent brought this suit for an injunction, alleging, *inter alia,* that the Act as applied violates § 8 of Article I of the Constitution and the Fourteenth Amendment.

The Iowa Supreme Court held that if respondent had limited its activities to a mail order business of the kind here involved, it would not be doing business in Iowa;

---

[3] In 1937 respondent mailed to residents of Iowa about 600,000 small catalogues and 427,000 large ones. Respondent maintains 12 retail stores in Iowa, its investment therein exceeding $500,000. The aggregate sales of the retail stores in Iowa for 1936 amounted to $5,080,000; for 1937, $5,600,000. Its mail order sales in Iowa for 1936 aggregated about $5,900,000; for 1937, about $5,400,000. It estimates that it has some 300,000 Iowa customers of its mail order houses and that in 1937 there were about 1,200,000 orders received from Iowa customers.

One of respondent's witnesses testified that the catalogues and bulletins mailed out were "our sole means of securing" the mail order business. But he also testified, "If a customer inquired from a clerk in the store as to whether or not he would have to pay a use tax upon an order, I believe the clerk would inform him that if he himself mailed the order that there would be no sales tax or use tax charged."

that, although technically the tax may be on the purchaser, it must be collected when the sale is made, at which time the property is outside the state; that these sales are separate and distinct from respondent's activities in Iowa. It therefore concluded that the tax as applied was unconstitutional since Iowa has no power to regulate respondent's activities outside the state or to regulate such activities as a condition to respondent's right to continue to do business in the state.

In passing on the constitutionality of a tax law "we are concerned only with its practical operation, not its definition or the precise form of descriptive words which may be applied to it." *Lawrence* v. *State Tax Comm'n,* 286 U. S. 276, 280; *Southern Pacific Co.* v. *Gallagher,* 306 U. S. 167, 177; *Wisconsin* v. *J. C. Penney Co.,* 311 U. S. 435. The fact that under Iowa law the sale is made outside of the state does not mean that the power of Iowa "has nothing on which to operate." *Wisconsin* v. *J. C. Penney Co., supra.* The purchaser is in Iowa and the tax is upon use in Iowa. The validity of such a tax, so far as the purchaser is concerned, "has been withdrawn from the arena of debate." *Henneford* v. *Silas Mason Co.,* 300 U. S. 577, 583; *Southern Pacific Co.* v. *Gallagher, supra.* It is one of the well-known functions of the integrated use and sales tax to remove the buyers' temptation "to place their orders in other states in the effort to escape payment of the tax on local sales." *Henneford* v. *Silas Mason Co., supra,* p. 581. As pointed out in that case (p. 582), the fact that the buyer employs agencies of interstate commerce in order to effectuate his purchase is not material, since the tax is "upon the privilege of use after commerce is at an end." And see *Southern Pacific Co.* v. *Gallagher, supra.* Use in Iowa is what is taxed regardless of the time and place of passing title and regardless of the time the tax is required to be paid. Cf. *McGoldrick* v. *Berwind-White Coal Mining Co.,* 309 U. S. 33, 49.

So the nub of the present controversy centers on the use of respondent as the collection agent for Iowa. The imposition of such a duty, however, was held not to be an unconstitutional burden on a foreign corporation in *Monamotor Oil Co.* v. *Johnson,* 292 U. S. 86, and *Felt & Tarrant Mfg. Co.* v. *Gallagher,* 306 U. S. 62. But respondent insists that those cases involved local activity by the foreign corporation as a result of which property was sold to its local customers, while in the instant case there is no local activity by respondent which generates or which relates to the mail orders here involved. Yet these orders are still a part of respondent's Iowa business. The fact that respondent could not be reached for the tax if it were not qualified to do business in Iowa would merely be a result of the "impotence of state power." *Wisconsin* v. *J. C. Penney Co., supra.* Since Iowa has extended to it that privilege, Iowa can exact this burden as a price of enjoying the full benefits flowing from its Iowa business. Cf. *Wisconsin* v. *J. C. Penney Co., supra.* Respondent cannot avoid that burden though its business is departmentalized. Whatever may be the inspiration for these mail orders, however they may be filled, Iowa may rightly assume that they are not unrelated to respondent's course of business in Iowa. They are nonetheless a part of that business though none of respondent's agents in Iowa actually solicited or placed them. Hence to include them in the global amount of benefits which respondent is receiving from Iowa business is to conform to business facts.

Nor is the mode of enforcing the tax on the privileges of these Iowa transactions any discrimination against interstate commerce. As we have seen, the use tax and the sales tax are complementary. Sales made wholly within Iowa carry the same burden as these mail order sales. A tax or other burden obviously does not discriminate against interstate commerce where "equality

is its theme." *Henneford* v. *Silas Mason Co., supra,* pp. 583–586; *McGoldrick* v. *Berwind-White Coal Mining Co., supra,* pp. 48–49.

Respondent, however, insists that the duty of tax collection placed on it constitutes a regulation of and substantial burden upon interstate commerce and results in an impairment of the free flow of such commerce. It points to the fact that in its mail order business it is in competition with out of state mail order houses which need not and do not collect the tax on their Iowa sales. But those other concerns are not doing business in the state as foreign corporations. Hence, unlike respondent, they are not receiving benefits from Iowa for which it has the power to exact a price. Respondent further stresses the cost to it of making these collections and its probable loss as a result of its inability to collect the tax on all sales.[4] But cost and inconvenience inhered in the same duty imposed on the foreign corporations in the *Monamotor* and *Felt & Tarrant* cases. And so far

---

[4] In Illinois respondent undertakes to collect the sales tax on mail orders from its Illinois customers. A notice and schedule of the tax for various amounts of orders are contained in the Illinois catalogue. It asserts that approximately 65% of those orders include an allowance for the tax. Where the orders are not accompanied by an amount covering the Illinois sales tax, respondent does not hold up the order but fills it and sends the customer a bill for the difference. It says that it collects approximately 36% of those deficiencies where the amount is less than 25¢; 70% to 75%, where the amount is more. On the assumption that on sales to Iowa purchasers the use tax would amount to $100,000 a year, respondent asserts that, based on its Illinois experience, the maximum that would be collected would be $68,000. To do that, it says, would entail a direct cost to it of approximately $13,700 a year. Those calculations are on the assumption that respondent would put a notice in its Iowa catalogues similar to the one used in Illinois. If such a notice were not given, it asserts that collections of the Iowa use tax would not exceed $35,000 (out of an assumed $100,000) and that its cost would be approximately $18,000.

as assumed losses on tax collections are concerned, respondent is in no position to found a constitutional right on the practical opportunities for tax avoidance which its method of doing business affords Iowa residents, or to claim a constitutional immunity because it may elect to deliver the goods before the tax is paid.

Prohibited discriminatory burdens on interstate commerce are not to be determined by abstractions. Particular facts of specific cases determine whether a given tax prohibitively discriminates against interstate commerce. Hence a review of prior adjudications based on widely disparate facts, howsoever embedded in general propositions, does not facilitate an answer to the present problem.

The judgment is reversed and the cause is remanded to the Iowa Supreme Court for proceedings not inconsistent with this opinion.

*Reversed.*

MR. JUSTICE STONE took no part in the consideration or disposition of this case.

MR. JUSTICE ROBERTS, dissenting.

I think that the judgment should be affirmed.

The respondent, a New York corporation, conducts an interstate mail order business. It has also established retail stores throughout the country. In 1928, to secure the privilege of conducting stores in Iowa as a foreign corporation, it obtained a permit which has been kept in force by payment of the fees prescribed by the State. No question arises with respect to the collection by the respondent of the tax on sales made in stores in Iowa or on sales based upon orders taken in those stores but filled by forwarding articles from a warehouse in another state.

The controversy arises only over pure mail order sales. These are consummated in the following manner: The respondent forwards to persons in Iowa catalogues de-

tailing the articles it has for sale, the prices, and the cost of transporting them. A person in Iowa forwards his written order to one of the respondent's mail order houses located outside Iowa for the purchase of tangible personal property as listed and priced in respondent's catalogue, the order being accompanied by a remittance of the purchase price, plus transportation charges, and usually specifying the method of transportation desired by the purchaser. The order is accepted or rejected at the place where it is received and, if accepted, is filled by delivery to the post office or to a carrier for direct shipment from the extra-state mail order house to the purchaser in Iowa.

This mail order branch of respondent's business is separate and distinct from any activity conducted at its stores in Iowa. In conducting it the respondent is in direct competition with other mail order houses which conduct their business in exactly similar fashion but have no stores in Iowa and are not therein registered as foreign corporations.

The method necessarily pursued in the respondent's mail order business makes it a certainty that it will be unable, by whatever practical efforts it may put forth, to collect the amount of the use tax on all its mail order sales made to persons in Iowa. In 1937 the number of its mail order transactions with some 300,000 persons in Iowa was approximately 1,200,000. Under the statute as attempted to be enforced against its mail order business, if, in 1937, the respondent had failed to collect from each customer the sum involved as tax, it would have been liable to Iowa in the aggregate for two per cent. on approximately $5,400,000,—the volume of its Iowa mail order business in that year. If it had made the effort to collect the tax, the cost of so doing would have been approximately eighteen per cent. of the total tax on the mail order sales made to persons in Iowa and, in addition to that cost, the respondent would have been liable

for approximately $38,000 of tax uncollected from pur-
·chasers. In addition, as a result of the exaction, the
respondent's mail order business will be placed at a seri-
ous disadvantage in competition with other mail order
concerns which have no retail stores in Iowa and so have
a price advantage of two per cent. of sales price as
against respondent.

The penalty for failing to collect the tax as agent for
the State, or to pay the sum not susceptible of collec-
tion from purchasers, as required by the State, will be
the revocation of respondent's permit for the conduct of
its stores in Iowa, which represent a large expenditure
for furniture, fixtures, appliances, and stock, and will
entail loss of rental values under long term leases.

I am of opinion that the attempted enforcement
of the statute in the manner proposed by the taxing
authorities of the State violates both the commerce clause
and the Fourteenth Amendment of the Constitution.

*First.* The respondent's mail order business is inter-
state commerce,[1] and Iowa may not prohibit the re-
spondent from conducting that business with her
citizens.[2] To attempt so to do would be a violation of
the commerce clause of the Constitution.

Not only so, but Iowa may not directly burden such
commerce. Therefore she may not tax the privilege of
engaging in it; regulate or license its pursuit,[3] or tax the

---

[1] *Heyman* v. *Hayes,* 236 U. S. 178, 186.

[2] *Bowman* v. *Chicago & N. W. Ry. Co.,* 125 U. S. 465; *Leisy* v.
*Hardin,* 135 U. S. 100; *Schollenberger* v. *Pennsylvania,* 171 U. S. 1;
*West* v. *Kansas Natural Gas Co.,* 221 U. S. 229, 250, 262; *Louisville
& Nashville R. Co.* v. *Cook Brewing Co.,* 223 U. S. 70, 82; *Minnesota
Rate Cases,* 230 U. S. 352, 401.

[3] *International Text Book Co.* v. *Pigg,* 217 U. S. 91, 105, 108; *Buck
Stove Co.* v. *Vickers,* 226 U. S. 205, 215; *Sault Ste. Marie* v. *Inter-
national Transit Co.,* 234 U. S. 333, 340; *Lemke* v. *Farmers Grain
Co.,* 258 U. S. 50; *Puget Sound Stevedoring Co.* v. *Tax Commission,*
302 U. S. 90, 94.

gross income derived from it.[4] And even if the respondent maintained a force of agents in Iowa soliciting orders to be shipped in interstate commerce that fact would not render it amenable to the regulation or taxation of its mail order business.[5]

Thus Iowa may not lawfully license or regulate the business of agents soliciting orders to be shipped in interstate commerce;[6] or limit or condition the right to enforce mail order contracts in Iowa courts.[7] The power to exclude foreign corporations altogether from doing a local business does not enable the State to impose burdens upon the transaction of interstate commerce by a foreign corporation registered in the State; and registration by a foreign corporation in order to do business within the State does not constitute a waiver of the corporation's right to transact interstate business free from the burdens of state regulation or taxation.[8]

Iowa may not abuse its conceded power to tax or regulate the respondent's activities within the State by attempting to compel compliance by the respondent with unconstitutional efforts to tax or burden its interstate commerce.[9] And Iowa may not forfeit, as it proposes to do, the right to conduct a domestic business by reason of the refusal of the respondent to submit to a burden upon its interstate business.[10]

---

[4] *Fisher's Blend Station* v. *Tax Commission,* 297 U. S. 650, 655; *Adams Manufacturing Co.* v. *Storen,* 304 U. S. 307.

[5] *Crutcher* v. *Kentucky,* 141 U. S. 47; *International Text Book Co.* v. *Pigg, supra.*

[6] *Brennan* v. *Titusville,* 153 U. S. 289; *Crenshaw* v. *Arkansas,* 227 U. S. 389.

[7] *Sioux Remedy Co.* v. *Cope,* 235 U. S. 197, 201; *Furst & Thomas* v. *Brewster,* 282 U. S. 493.

[8] *Fidelity & Deposit Co.* v. *Tafoya,* 270 U. S. 426, 434; *Hanover Fire Ins. Co.* v. *Harding,* 272 U. S. 494, 507, 517.

[9] *Looney* v. *Crane Co.,* 245 U. S. 178, 187.

[10] *Western Union Telegraph Co.* v. *Kansas,* 216 U. S. 1, 34; *Pullman Co.* v. *Kansas,* 216 U. S. 56; *Atchison, T. & S. F. Ry. Co.* v.

Clearly in this instance the effort is directly and substantially to burden the transaction of an interstate business with the state's citizens, in violation of the commerce clause, by the threat of penalizing disobedience by the forfeiture of the right to transact, within Iowa, an independent business which the respondent conducts in accordance with all existing laws, including the law requiring it to deduct and pay over the amount of the Iowa sales tax. Upon reason, as well as upon the unbroken current of authority in this court, Iowa has no such power to burden interstate commerce.

*Monamotor Oil Co.* v. *Johnson,* 292 U. S. 86, and *Felt & Tarrant Mfg. Co.* v. *Gallagher,* 306 U. S. 62, relied upon by the petitioners, are not in point.

The first is not apposite because there the company was engaged in the distribution of gasoline in the State of Iowa. This was the only activity drawn in question. The statute merely required the company, in distributing gasoline to users, to add the tax to its sales price and report and return the amount of tax thus withheld. In the second, the collection of the use tax was imposed with respect to property sold by the corporation through its general agents who were doing business in the State of California and were handling articles sold for delivery in that State. As an incident of such sales, the seller was required to add the tax and make return of it to the State.[11]

In justification of the exaction it is said that the purchaser is in Iowa and the tax is on the purchaser's use in that State. But if these facts were determinative they would justify the imposition of a tax or burden, by the

---

*O'Connor,* 223 U. S. 280, 285; *Western Union Tel. Co.* v. *Foster,* 247 U. S. 105, 114; *Frost Trucking Co.* v. *Railroad Commission,* 271 U. S. 583, 593.

[11] Compare *Wiloil Corporation* v. *Pennsylvania,* 294 U. S. 169; *Graybar Electric Co.* v. *Curry,* 308 U. S. 513.

state of the purchaser's residence, on every transaction in which goods are sold in interstate commerce. Attention is also called to the fact that Iowa cannot effectively reach its own citizens in order to enforce the use tax on them. This cannot, however, justify the state's attempt to save itself trouble by placing an unconstitutional burden upon interstate commerce conducted by a citizen of another state. Reference is made to the circumstance that, as a similar tax is laid on local sales in Iowa, there is no discrimination in imposing the tax or its collection upon the respondent, but the argument will not serve to legalize the tax. A state cannot justify a burden on interstate commerce by laying a similar burden on local commerce.[12]

*Second.* So far as the Fourteenth Amendment is concerned, Iowa may lay a tax on any activity of the respondent which it pursues within the State, but plainly, upon the facts disclosed, there is, in the conduct of respondent's mail order business, no such local activity. The Supreme Court of the State correctly found:

"The sales are consummated outside the State of Iowa in each instance. They are separate and distinct from plaintiff's activities in Iowa. The statute here challenged seeks to impose upon plaintiff the obligation that it 'shall at the time of making such sales, whether within or without the state, collect the tax imposed by this chapter from the purchaser.' The sales are made outside of Iowa and the statute requires plaintiff to collect the tax at the time the sales are made. It clearly seeks to regulate activities of plaintiff outside the state. . . . Under repeated pronouncements of the Supreme Court of the United States, hereinbefore reviewed and quoted from, the State of Iowa has no such right."

---

[12] *Western Union Telegraph Co.* v. *Kansas, supra; Crew Levick Co.* v. *Pennsylvania,* 245 U. S. 292.

Delivery to a designated carrier is delivery to the customer [13] and, in this case, is completed outside Iowa. The attempt, therefore, to impose a burden upon such delivery or to regulate the transaction is but an effort on the part of Iowa to regulate or tax an event which occurs outside her borders and over which she has no jurisdiction.[14] This court has recently enforced this principle in a case on its merits more favorable to the State's contention than the present.[15] There it was said:

"It follows that such a tax, otherwise unconstitutional, is not converted into a valid exaction merely because the corporation enjoys outside the state economic benefits from transactions within it, which the state might but does not tax, or because the state might tax the transactions which the corporation carries on outside the state if it were induced to carry them on within."

*McGoldrick* v. *Berwind-White Coal Mining Co.*, 309 U. S. 33, is distinguishable from the instant case for there the decision was grounded on the fact that the transfer of title and consummation of sale depended upon delivery by the seller in the taxing state.

In this aspect also the power of the State does not extend to measures which condition respondent's privilege to do business in another state free from the regulation or taxation of Iowa.[16]

The CHIEF JUSTICE joins in this opinion.

---

[13] *United States* v. *R. P. Andrews & Co.*, 207 U. S. 229; compare *Garretson* v. *Selby*, 37 Iowa 529.

[14] *St. Louis Cotton Compress Co.* v. *Arkansas*, 260 U. S. 346.

[15] *Connecticut General Life Ins. Co.* v. *Johnson*, 303 U. S. 77.

[16] *New York Life Ins. Co.* v. *Dodge*, 246 U. S. 357, 375; *Home Insurance Co.* v. *Dick*, 281 U. S. 397, 407; *James* v. *Dravo Contracting Co.*, 302 U. S. 134, 139.