127 So.2d 502

**HALLIBURTON OIL WELL CEMENTING COMPANY**

v.

**James S. REILY, Collector of Revenue of the State of Louisiana.**

No. 44934.

Feb. 15, 1961.

Rehearing Denied March 20, 1961.

Chapman L. Sanford, Emmett E. Batson, Frederick S. Haygood, Levi A. Himes, John B. Smullin, Baton Rouge, for defendant-appellant.

Taylor, Porter, Brooks, Fuller & Phillips, Baton Rouge, for plaintiff-appellee.

HAMLIN, Justice.

The following two questions are presented for our determination on this appeal from a judgment rendered in favor of Halliburton Oil Well Cementing Company and against Robert L. Roland,[1] Collector of Revenue of the State of Louisiana, in the sum of $43,325.63, plus 2% interest from December 13, 1956 until paid:

(1) In the calculation of the Louisiana Use Tax (LSA–R.S. 47:301 et seq.) as-sessed on equipment brought into the State of Louisiana from another state, should such tax be levied only on the component parts of the whole, where the owner himself fabricated and assembled the whole or finished product outside of the State of Louisiana, or should the tax be levied on the cost price of the finished fabricated product as set forth in the statute, supra, so as to include labor and shop overhead?

(2) Is machinery or equipment purchased in another state through the transactions of so-called isolated sales and later brought into the State of Louisiana for use subject to the Louisiana Use Tax?

Halliburton Oil Well Cementing Company (hereinafter referred to as Halliburton) is engaged in the business of servicing oil wells throughout the oil producing states of the United States, including Louisiana. Its principal place of business is maintained in Duncan, Oklahoma, and there it manufactures, assembles, installs, and builds up specialized oil well service units which it employs in its oil well service operations. Halliburton procures from various vendors throughout the United States raw materials, semi-finished, and finished articles necessary for the manufacture, assembly, installation, and build-up of well service units. When a well service unit has been completely processed at Duncan, Oklahoma and has been tested for operation, it

1. James S. Reily, originally named as defendant, was lawfully succeeded in office by Robert L. Roland, who was substituted as defendant on July 16, 1959.

is assigned to one of Halliburton's various field camps in the United States, where it obtains a permanent situs unless transferred to another field camp location where greater use may be made of it. A certain number of these units came to rest in Louisiana and obtained a permanent situs therein servicing oil wells located in Louisiana. Halliburton's books are kept in Oklahoma; they reflect the cost value of the units as comprising material cost, labor cost, and shop overhead.

In addition to the above units, Halliburton keeps in Louisiana certain cementing service units it purchased from the Spartan Tool and Service Company of Houston, Texas when that company determined that it should no longer continue in the business of servicing oil wells, and an airplane purchased from the Western Newspaper Union of New York, which company is not regularly engaged in the business of selling airplanes.

For the years 1952, 1953, 1954, and 1955, Halliburton regularly filed with the State of Louisiana tax returns showing the amount of use tax money, as reflected by its calculations, due the State of Louisiana by it on service units employed in the State. Such amounts were paid to the State of Louisiana at the time of filing the statutory use tax returns.

On December 13, 1956, after lengthy correspondence and numerous conferences, Halliburton paid to the Collector of Revenue of the State of Louisiana (hereinafter referred to as Collector), under protest (LSA–R.S. 47:1576), a deficiency tax assessment of $57,278.17, representing principal and interest, and also paid additional interest of $142.83; it denied that $43,189.27, plus a proportionate part of the additional interest, was due the State of Louisiana. By stipulation the deficiency tax assessment was allocated in the following manner:

| | Phase | Principal | Interest | Total |
|---|---|---|---|---|
| 1. | Labor and shop overhead | $30,942.20 | $5,296.23 | $36,238.43 |
| 2. | Cost price versus depreciated value | 2,296.83 | 386.15 | 2,682.98 |
| 3. | Isolated sales | 3,789.20 | 615.02 | 4,404.22 |
| | Total amount in dispute | $37,028.23 | $6,297.40 | $43,325.63 |
| | Amount not in dispute | 12,063.03 | 2,032.34 | 14,095.37 |
| | Totals | $49,091.26 | $8,329.74 | $57,421.00 |

Halliburton brought suit for a return of the amount in dispute, supra, alleging that the Use Tax, if interpreted and applied as the Collector would interpret and apply it

to Halliburton, would cast upon the tax-payer (Halliburton) a burden more onerous than that which would be levied by the Louisiana Sales and Use Tax had the transactions involved occurred in Louisiana; and, that a state Use Tax may be upheld as reasonable, legal and constitutional, only insofar as the burden thereof is equal to and not in excess of the burden of the Sales Tax of that same state, to which Sales Tax said Use Tax is complementary. Plaintiff further alleged that the tax demanded of it infringed upon the right of regulation of interstate commerce by Congress (Article I, Section 8, Clause 3, Constitution of the United States), in that it was an attempt by the State of Louisiana to lay a tax on the privilege of engaging in interstate commerce and upon the carrying on of the business of interstate commerce. It still further alleged that it would be deprived of its property without due process of law, contrary to the protection and guaranty granted under the Constitution of the United States and particularly under the Fourteenth Amendment thereof and under Article I, Section 2, of the Constitution of the State of Louisiana, LSA, should it be required to pay the tax assessed.

The trial court agreed with plaintiff and rendered judgment in its favor after trial on the following three issues:[2]

"1. For the purposes of calculating the Louisiana Use Tax upon items of specialized oil well equipment brought into the State of Louisiana and used therein by petitioner, the Collector included the actual cost to petitioner of the physical equipment and parts purchased by petitioner outside of Louisiana, and incorporated, outside of Louisiana, into such specialized equipment, and also the labor and shop overhead, incurred by petitioner in constructing said specialized oil field equipment in its shops in Oklahoma. Halliburton admits that the physical equipment and parts should properly be included in the tax base, but denies that the labor and shop overhead were properly included. (This phase of the matter is hereinafter sometimes called *The labor and shop overhead phase* of this case.)

"2. For the purpose of calculating the Louisiana Use Tax upon items of specialized oil well equipment brought into the State of Louisiana and used herein by petitioner, the Collector used the 'original cost' of all equipment brought into the State of Louisiana without allowance for depreciation which had occurred prior to the equipment being brought into the State of Louisiana. Halliburton contends that the values used for computing the use tax due on this equipment should not be greater than the fair market value of the equipment at the time it was

2. These issues appear in a stipulation of facts contained in the record.

brought into Louisiana. (This phase of the matter is hereinafter sometimes called *'The cost price versus depreciated value phase'* of this case.)

"3. For the purpose of calculating the Louisiana Use Tax upon items of equipment brought into the State of Louisiana and used herein by petitioner, the Collector assessed the use tax on the value of certain equipment (including specialized oil well equipment and an airplane) which was purchased outside Louisiana by petitioner, from vendors not regularly engaged in the business of selling such items. Halliburton denies that any sales tax or use tax is due to the State of Louisiana on these items. (This phase of the matter is hereinafter sometimes called *'The isolated sale phase'* of this case.)"

Appellant (Collector) agrees that the trial court was correct in its ruling on Issue No. 2, "The cost price versus depreciated value phase," supra, in view of the holding of the Supreme Court of Louisiana, in the case of Fontenot v. S. E. W. Oil Corporation, 232 La. 1011, 95 So.2d 638, that a person importing an article for use in this state must pay the "use" tax the same as if it had been sold at retail, and that such use shall be considered equivalent to a sale at retail as of time of importation. The S. E. W. decision was handed down on May 6, 1957; the petition in the instant matter was filed on December 13, 1956, and

judgment was rendered by the trial court on October 13, 1959. It is stated in appellant's brief:

"The Collector sought to impose the use tax on certain equipment which had sustained actual depreciation prior to its being brought into the State using as a tax base the original cost to the taxpayer. This Court has now held in the case of Fontenot vs. S. E. W. Oil Corporation, 232 La. 1011, 95 So.2d 638 (1957) that cost price means the fair market value of property at the moment of taxation—the time it becomes a part of the mass of property of the State and not original cost at the time of acquisition.

"The Collector agrees that the reasoning of the S. E. W. case correctly analyzes the intent and purpose of the Louisiana Use Tax and therefore will not argue this phase."

The Collector urges that the district court erred in not finding that the incidence of the Louisiana Use Tax is non-discriminatory; that it is equal in its application because it is upon the use of tangible personal property after it has been withdrawn from commerce; that the combined effect and purpose of the Sales Tax and Use Tax is to insure that all tangible personal property used or consumed in the State of Louisiana bears a 2% tax, either at the time of its original sale at retail in the state or at the

time of its first use in the state if a 2% sales tax has not already been paid by the user to any other state.

The law imposing the tax in question is contained in Chapter 2 of Title 47, Louisiana Revised Statutes, entitled, "Sales Tax." The provisions pertinent to this case read as follows:

LSA–R.S. 47:302:

"A. There is hereby levied a tax upon the sale at retail, the use, the consumption, the distribution, and the storage for use or consumption in this state, of each item or article of tangible personal property, as defined herein, the levy of said tax to be as follows:

"(1) At the rate of two per centum (2%) of the sales price of each item or article of tangible personal property when sold at retail in this state; the tax to be computed on gross sales for the purpose of remitting the amount of tax due the state, and to include each and every retail sale.

"(2) At the rate of two per centum (2%) of the cost price of each item or article of tangible personal property when the same is not sold but is used, consumed, distributed, or stored for use or consumption in this state; provided there shall be no duplication of the tax.

\*       \*       \*       \*       \*       \*

"C.    \*    \*    \*

"The tax levied in this Section shall be collected from the dealer, as defined herein, shall be paid at the time and in the manner hereinafter provided, and shall be, in addition to all other taxes, whether levied in the form of excise, license, or privilege taxes, and shall be in addition to taxes levied under the provisions of Chapter 3 of Sub-title II of this Title."

LSA–R.S. 47:301(13) (As Amended):

"(13) 'Sales price' means the total amount for which tangible personal property is sold, including any services, except services for financing, that are a part of the sale valued in money, whether paid in money or otherwise, and includes the cost of materials used, labor or service costs, except costs for financing which shall not exceed the legal interest rate and a service charge not to exceed 6% of the amount financed, and losses; provided that cash discounts allowed and taken on sales shall not be included, nor shall the sales price include the amount charged for labor or services rendered in installing, applying, remodeling or repairing property sold."

LSA–R.S. 47:301(10):

"(10) 'Retail sale,' or 'sale at retail,' means a sale to a consumer or to any person for any purpose other than

for resale in the form of tangible personal property, and shall mean and include all such transactions as the collector, upon investigation, finds to be in lieu of sales; provided that sales for resale must be made in strict compliance with the rules and regulations. Any dealer making a sale for resale, which is not in strict compliance with the rules and regulations, shall himself be liable for and pay the tax."

LSA–R.S. 47:301(3):

"(3) 'Cost price' means the actual cost of the articles of tangible personal property without any deductions therefrom on account of the cost of materials used, labor or service cost, transportation charges or any other expenses whatsoever."

LSA–R.S. 47:301(18):

"(18) 'Use' means and includes the exercise of any right or power over tangible personal property incident to the ownership thereof, except that it shall not include the sale at retail of that property in the regular course of business."

LSA–R.S. 47:301(4):

"(4) 'Dealer' includes every person who manufactures or produces tangible personal property for sale at retail, for use, or consumption, or distribution or for storage to be used or consumed in this state.

" 'Dealer' is further defined to mean:

"(a) every person, who imports, or causes to be imported, tangible personal property from any state or foreign country for sale at retail, for use, or consumption, or distribution, or for storage to be used or consumed in this state;

"(b) every person who sells at retail, or who offers for sale at retail, or who has in his possession for sale at retail, or for use, or consumption, or distribution, or storage to be used or consumed in this state, tangible personal property as defined herein;

"(c) any person who has sold at retail, or used, or consumed, or distributed, or stored for use or consumption in this state, tangible personal property and who cannot prove that the tax levied by this Chapter has been paid on the sale at retail, the use, the consumption, the distribution, or the storage of said tangible personal property; * *"

LSA–R.S. 47:303:

"The tax imposed under R.S. 47:302 shall be collectible from all persons, as hereinafter defined, engaged as dealers, as hereinafter defined.

"On all tangible personal property imported, or caused to be imported, from other states or foreign country, and used by him, the 'dealer', as hereinafter defined, shall pay the tax im-

posed by this Chapter on all articles of tangible personal property so imported and used, the same as if the said articles had been sold at retail for use or consumption in this state. For the purposes of this Chapter, the use, or consumption, or distribution, or storage to be used or consumed, in this state of tangible personal property, shall each be equivalent to a sale at retail, and the tax shall thereupon immediately levy and be collected in the manner provided herein, provided there shall be no duplication of the tax in any event."

LSA–R.S. 47:305:

" * * * It is not the intention of this Chapter to levy a tax upon articles of tangible personal property imported into this state, or produced or manufactured in this state, for export; nor is it the intention of this Chapter to levy a tax on bona fide interstate commerce. It is, however, the intention of this Chapter to levy a tax on the sale at retail, the use, the consumption, the distribution, and the storage to be used or consumed in this state, of tangible personal property after it has come to rest in this state and has become a part of the mass of property in this state.

"The provisions of this Chapter shall not apply in respect to the use, or consumption, or distribution, or storage of tangible personal property for use or consumption in this state, upon which a like tax equal to, or greater than, the amount imposed by this Chapter has been paid in another state, the proof of the payment of such tax to be according to rules and regulations made by the collector of revenue. If the amount of tax paid in another state is not equal to, or greater than, the amount of tax imposed by this Chapter, then the dealer shall pay to the collector of revenue an amount sufficient to make the tax paid in the other state equal to the amount imposed by this Chapter.

"The 'use tax' under this Chapter shall not apply to tangible personal property owned or acquired in this state, or imported into this state, or held or stored in this state, prior to June 7, 1948; but the 'use tax' will apply to all tangible personal property imported or caused to be imported into this state on or after that date, unless the property has previously borne a sales or use tax in another state, equal to or greater than the tax imposed by this Chapter."

The constitutionality of a use tax has been upheld by the Supreme Court of the United States in the case of Henneford et al. v. Silas Mason Co., Inc. et al., 300 U.S. 577, 57 S.Ct. 524, 81 L.Ed. 814, wherein the Court stated that one of the effects of such a tax must be that local retail sellers will be helped to compete upon terms of equality

with retail dealers in other states who are exempt from a sales tax or any corresponding burden. The Court further stated that another effect, or at least another tendency, must be to avoid the likelihood of a drain upon the revenues of the state—buyers being no longer tempted to place their orders in other states in the effort to escape payment of the tax on local sales. The Court then asked, "Do these consequences which must have been foreseen, necessitate a holding that the tax upon the use is either a tax upon the operations of interstate commerce or a discrimination against such commerce obstructing or burdening it unlawfully?" It answered its question as follows:

"The tax is not upon the operations of interstate commerce, but upon the privilege of use after commerce is at an end.

"Things acquired or transported in interstate commerce may be subjected to a property tax, nondiscriminatory in its operation, when they have become part of the common mass of property within the state of destination. * * * This is so, indeed, though they are still in the original packages. * * * For like reasons they may be subjected, when once they are at rest, to a nondiscriminatory tax upon use or enjoyment. * * * The privilege of use is only one attribute, among many of the bundle of privileges that make up property or ownership. * * * A

state is at liberty, if it pleases, to tax them all collectively, or to separate the faggots and lay the charge distributively. * * * Calling the tax an excise when it is laid solely upon the use (Vancouver Oil Co. v. Henneford, 183 Wash. 317, 49 P.(2d) 14) does not make the power to impose it less, for anything the commerce clause has to say of its validity, than calling it a property tax and laying it on ownership. 'A nondiscriminatory tax upon local sales * * * has never been regarded as imposing a direct burden upon interstate commerce and has no greater or different effect upon that commerce than a general property tax to which all those enjoying the protection of the state may be subjected.' Eastern Air Transport, Inc. v. South Carolina Tax Commission, 285 U.S. 147, 153, 52 S.Ct. 340, 341, 76 L.Ed. 673. A tax upon the privilege of use or storage when the chattel used or stored has ceased to be in transit is now an impost so common that its validity has been withdrawn from the arena of debate. * * *" See, Nelson v. Sears, Roebuck & Company, 312 U.S. 359, 61 S.Ct. 586, 85 L.Ed. 888; State ex rel. Cooper v. Pape, 194 La. 890, 195 So. 346; Mouledoux v. Maestri, 197 La. 525, 2 So.2d 11.

■ We conclude that under the rulings of the above authorities the "use tax" as ap-

plied to plaintiff does not infringe upon the regulation of interstate commerce by Congress. The taxed matter herein had definitely come to rest in Louisiana and had acquired a situs in the State.

Plaintiff endeavors to set forth the alleged inequality of the use tax as applied to it by arguing that if a local oil well servicing company had manufactured its own equipment in Louisiana it would only have had to pay a sales tax on the component parts employed, whereas plaintiff has been assessed a use tax not only on the component parts but also on the cost of labor and shop overhead. Plaintiff argues, as set forth, supra, that its burden, as compared to that of a local taxpayer, is so unequal as to constitute a violation of the 14th Amendment to the United States Constitution and of Article I, Section 2, of the Constitution of Louisiana.

"When dealing with their proper domestic concerns, and not trenching upon the prerogatives of the national government or violating the guaranties of the Federal Constitution, the states have the attribute of sovereign powers in devising their fiscal systems to insure revenue and foster their local interests. The states, in the exercise of their taxing power, as with respect to the exertion of other powers, are subject to the requirements of the due process and the equal protection clauses of the 14th Amendment, but that Amendment im-

poses no iron rule of equality, prohibiting the flexibility and variety that are appropriate to schemes of taxation. The state may tax real and personal property in a different manner. It may grant exemptions. The state is not limited to ad valorem taxation. It may impose different specific taxes upon different trades and professions and may vary the rates of excise upon various products. In levying such taxes, the state is not required to resort to close distinctions or to maintain a precise, scientific uniformity with reference to composition, use or value. To hold otherwise would be to subject the essential taxing power of the state to an intolerable supervision, hostile to the basic principles of our government and wholly beyond the protection which the general clause of the 14th Amendment was intended to assure. * * *

"With all this freedom of action, there is a point beyond which the state can not go without violating the equal protection clause. The state may classify broadly the subjects of taxation, but in doing so it must proceed upon a rational basis. The state is not at liberty to resort to a classification that is palpably arbitrary. The rule is generally stated to be that the classification 'must rest upon some ground of difference having a fair and substantial relation to the object of the legislation,

so that all persons similarly circumstanced shall be treated alike.' F. S. Royster Guano Co. v. [Commonwealth of] Virginia, 253 U.S. 412, 415, 64 L. Ed. 989, 990, 40 Sup.Ct.Rep. 560; * * * Ohio Oil Company v. Conway, 281 U.S. 146, 74 L.Ed. 775, 50 S. Ct. 310. See, Allied Stores of Ohio, Inc. v. Bowers, [358 U.S. 522], 79 S.Ct. 437 [3 L.Ed.2d 480].

"What does 'equal protection of the laws' mean as applied to taxation? Equal protection cannot be said to be denied by a statute which operates alike on all persons and property similarly situated, or by proceedings for the assessment and collection of taxes which follow the course customarily pursued in the state.

"The inhibition of the amendment was designed to prevent any person or class of persons from being singled out as special subject for discriminating and hostile legislation. It does not require equal rates of taxation on different classes of property, nor prohibit unequal taxation so long as the inequality is not based upon arbitrary classification. Legislation which, in carrying out a public purpose, is limited in its application, does not violate the provision if, within the sphere of its operation, it affects alike all persons similarly situated. In other words it does not prohibit special legislation, or legislation that is limited either in the objects to which it is directed, or by the territory within which it is to operate. It 'merely requires that all persons subjected to such legislation shall be treated alike, under like circumstances and conditions, both in the privileges conferred and in the liabilities imposed.' The rule of equality requires no more than that the same means and methods be applied impartially to all of the constituents of each class, so that the law shall operate equally and uniformly upon all persons in similar circumstances. * * *" Cooley Taxation, Vol. 1, Fourth Edition, Section 249, p. 533 et seq. See, also, Section 259, p. 558, same volume.

We do not find that the Louisiana Use Tax treats any person differently from any other person in a like circumstance. All users are subjected to the same rate of tax; there is no arbitrary or unreasonable distinction. The law contains no hostility nor discrimination; it singles out no class of persons as subjects for its assessment.

We do not find that the use tax as herein applied imposes an unconstitutional burden on plaintiff. Plaintiff's comparison, supra, is not apposite. There must be an incidence of taxation; there must be an occurrence which brings the use tax into effect. In order to have an imposition of a sales tax, there must be a sale. Likewise, to have a levy of a use tax, property must

come to rest in the State after leaving interstate commerce, and there must be a user of the property in the State. In the instant case, the fabricated product was transported to, came to rest in, became part of the common mass of property in, and was used in Louisiana. The proper comparison would be between the use tax on the assembled equipment and a sales tax on the same equipment if it were sold. What takes place before the fabricated product leaves interstate commerce and enters the State of Louisiana to rest is not within the contemplation of the statute except for the determination of cost price. Labor and shop overhead are considered incidentally together with other items as a basis for arriving at cost. LSA–R.S. 47:305 states that the intention of the Chapter is to levy a tax on the sale at retail, the use, the consumption, the distribution, and the storage to be used or consumed in this State, of tangible personal property after it has come to rest in this State and has become a part of the common mass of property in this State.

LSA–R.S. 47:301(3) recites that:

"'Cost price' means the actual cost of the articles of tangible personal property without any deductions therefrom on account of the cost of materials used, labor or service cost, transportation charges or any other expenses whatsoever."

LSA–R.S. 47:303, supra, states that use tax is paid on all articles of tangible personal property imported and used, the same as if the said articles had been sold at retail for use or consumption in this State. This section was properly interpreted in the case of Fontenot v. S. E. W. Oil Corporation, 232 La. 1011, 95 So.2d 638, 640, as follows:

"According to this section the person importing an article for use in this state must pay the 'use' tax the same as if it had been sold at retail, and such use shall be considered equivalent to a sale at retail as of the time of importation. These provisions, along with the others above mentioned, clearly indicate that the 'use' tax is to be computed on the retail price the property would have brought when imported—that is, its then value or worth."

We conclude that with respect to Issue No. 1, "Labor and shop overhead phase," the use tax should be levied on "cost price" as set out in Chapter 2 of Title 47 of the Louisiana Revised Statutes, entitled "Sales Tax," supra; the trial court was in error in omitting labor and shop overhead from the valuation assigned to the fabricated service units for use tax assessment.

We now pass to the question of "isolated sales" involved herein.

In support of its contention that the use tax cannot be imposed on tangible property which has come to rest in Louisiana but was purchased in another state through the

method of isolated sales, plaintiff relies on the case of State of Alabama v. Bay Towing & Dredging Company, Inc., 265 Ala. 282, 90 So.2d 743, 746, wherein the Supreme Court of Alabama stated:

> "As we see it, if the use tax act is construed as imposing a tax on the use in this state of tangible personal property purchased outside the state in casual and isolated sales transactions, such tax would constitute an unlawful discrimination against interstate commerce, contrary to the Commerce Clause of the United States Constitution, Const. art. 1, sec. 8, cl. 3, since no similar or equivalent tax burden is imposed in connection with the purchase of such property in casual and isolated sales transactions within the state. * * *"

We might say at the outset that we do not feel constrained to follow the Alabama case, supra, because we find that the instant matter does not involve a question of interstate commerce. The alleged taxable property had come to rest in Louisiana and had acquired a situs in this State. Henneford et al. v. Silas Mason Co., Inc. et al., supra.

Plaintiff argues that if the property alleged to be free from the assessment of the use tax (Issue No. 3, "Isolated sale phase") had been purchased in Louisiana under similar transactions, it would not have been assessed with a sales tax, and that, therefore, the levy of the use tax on the property deprives plaintiff of its property without due process of law.

In LSA–R.S. 47:301(10), we find the statement that the term "sale at retail" does not include an isolated or occasional sale of tangible personal property by a person not engaged in such business. In LSA–R.S. 47:305, it is directed that the dealer shall pay the tax imposed by Chapter 2 of Title 47, entitled "Sales Tax," on all· articles of tangible personal property so imported and used, the same as if the said articles had been sold at retail for use or consumption in this state.

The exemption of an isolated sale from the provisions of the sales tax applies strictly to sales within the State of Louisiana; it has no effect whatsoever on any transaction without the state. The direction that the use tax shall be paid in the same manner as if the articles had been sold at retail applies to the method of payment. The property involved herein has not borne a similar tax in another state. Therefore, since the State of Louisiana levied the first assessment on property which was transported to, came to rest in, became part of the common mass of property in, and was used in Louisiana, we find no discrimination nor deprivation of property without due process of law.

We conclude that the trial court was in error in disallowing the tax claimed by the Collector as to Issue No. 3, "Isolated sale phase."

As stated, supra, the trial judge rendered judgment in favor of Halliburton and against the Collector for $43,325.63, plus interest at the rate of 2% from December 13, 1956, until paid, and for all costs of this suit.

The Collector agrees that the trial court was correct in its ruling on Issue No. 2, "The cost price versus depreciated value phase," supra, amounting to $2,682.98. Therefore, Halliburton is entitled to the return of this amount.

■ The trial court was in error in decreeing that all costs be paid by the Collector. LSA–R.S. 13:4521 provides:

"Except as hereinafter provided, neither the state, nor any parish, municipality, or other political subdivision, public board or commission, shall be required to pay court costs in any judicial proceeding instituted or prosecuted by or against the state or any such parish, municipality, or other political subdivision, board or commission. This Section shall have no application to stenographers' costs for taking testimony." See, also, Per Curiam on Further Application for Rehearing in Louisiana-Nevada Transit Co. v. Fontenot 233 La. 600, 97 So.2d 409.

For the reasons assigned, the judgment appealed from in favor of plaintiff is amended by reducing the amount thereof from $43,325.63 to $2,682.98, with interest at the rate of 2% per annum from December 13, 1956, until paid. Appellee to pay all costs, except such as must be borne by appellant under the provisions of LSA–R.S. 13:4521.