**CATERPILLAR, INC., Appellant,**

v.

**IOWA STATE BOARD OF TAX REVIEW, and Iowa Department of Revenue, Appellees.**

No. 91–1452.

Supreme Court of Iowa.

Sept. 23, 1992.

David J. Meloy and Roy W. Van Der Kamp, of Stanley, Rehling, Lande & Van Der Kamp, Davenport, for appellant.

Bonnie J. Campbell, Atty. Gen., Harry M. Griger, Sp. Asst. Atty. Gen., and Marcia Mason, Asst. Atty. Gen., for appellees.

Considered by HARRIS, P.J., and CARTER, LAVORATO, NEUMAN, and SNELL, JJ.

HARRIS, Judge.

The question involves a tax on the purchase of machinery. Orders were placed from out-of-state vendors prior to the effective date of a sales and use tax increase; delivery was made after the increase. The district court determined that the transaction was taxable at the increased rate. We reverse and remand.

The Iowa legislature increased the Iowa sales and use tax from three percent to four percent, effective March 1, 1983. Plaintiff Caterpillar ordered several large machines from vendors located outside of Iowa for its Davenport, Iowa, manufacturing plant. Although the orders were placed in 1981 and 1982, the machinery was not delivered until after March 1, 1983.

The Iowa department of revenue and finance (the department) determined that the transaction should be taxed at the four percent rate. Caterpillar paid accordingly under protest and filed for a refund of $115,408.96, the one percent difference. After unsuccessfully exhausting its administrative remedies, Caterpillar brought this action for judicial review. This is an appeal from a district court ruling affirming the department's decision.

The department adopted "transition provisions" meant to be used in determining whether the three percent or four percent tax rate was applicable. Department rule 701 I.A.C. 14.3 focused on the time of contract for sales tax purposes, and on the time of delivery for use taxes. It provided:

1. The four percent sales tax rate applies to sales of tangible personal property where the sales contract is entered into on or after March 1, 1983. *Jones v. Gordy,* 169 Md. 173, 180 Atl. 272 (1935).

EXAMPLE: A enters into a sales contract with B to purchase a tractor from B. This contract (offer and acceptance) is made on February 28, 1983. The tractor is delivered to A on March 3, 1983, and A pays B on March 10, 1983. Since the contract was entered into prior to March 1, 1983, the sales tax in this example is on the three percent rate.

. . . .

2. The four percent use tax rate applies to the use of tangible personal property in this state where the first taxable use occurs on or after March 1, 1983.

EXAMPLE: On January 24, 1983, A and B enter into a sales contract outside of Iowa for the purchase by A from B of a machine. The machine is not delivered until March 16, 1983. The delivery to A constitutes a use by A in Iowa for the first time of the machine. Under these circumstances the machine is subject to the four percent rate since the tax rate in effect at the time of use (March 16, 1983) governs where the property is purchased outside of Iowa. *See City of Ames v. State Tax Comm'n,* 246 Iowa 1016, 71 N.W.2d 15 (1955).

The example applies a three percent sales tax to contracts entered before the effective date of a rate change when an Iowa business makes the sale, even when delivery occurs after the effective date. A four percent use tax applies, however, when a sales contract with a non-Iowa business is entered into before the effective date of the rate increase, but delivery occurs thereafter. The department concedes that rule 14.3 is at least in part invalid because the first example under rule 14.-3(1) (sales tax) is inconsistent with our subsequent holding in *Sturtz v. Iowa Department of Revenue,* 373 N.W.2d 131, 134 (Iowa 1985) (delivery in Iowa triggers sales tax).

▓▓ I. A state may not impose a tax that discriminates against interstate commerce by providing a direct commercial advantage to local businesses. *Boston Stock Exch. v. State Tax Comm'n*, 429 U.S. 318, 329, 97 S.Ct. 599, 607, 50 L.Ed.2d 514, 524 (1977) (quoting *Northwestern States Portland Cement Co. v. Minnesota*, 358 U.S. 450, 458, 79 S.Ct. 357, 362, 3 L.Ed.2d 421, 427 (1959)). State legislation designed to further legitimate state interests and applied without discriminating against interstate commerce, however, is permissible, even though it may affect interstate commerce. *Hearst v. Iowa Dep't of Revenue and Fin.*, 461 N.W.2d 295, 307 (Iowa 1990). As long as class distinctions are not based on any in-state or out-of-state criteria, the commerce clause is not violated. *Id.* at 308 (citing *Commonwealth Edison Co. v. Montana*, 453 U.S. 609, 617, 101 S.Ct. 2946, 2953, 69 L.Ed.2d 884, 895 (1981); *Exxon Corp. v. Governor of Maryland*, 437 U.S. 117, 126, 98 S.Ct. 2207, 2214, 57 L.Ed.2d 91, 100 (1978); *Moorman Mfg. Co. v. Bair*, 437 U.S. 267, 277 n. 12, 98 S.Ct. 2340, 2346 n. 12, 57 L.Ed.2d 197, 207 n. 12 (1978)). Under these principles sales and use taxes must impose the same burden and this the department rule failed to do.

▓▓ Having conceded the flaw in rule 14.3, the department nevertheless insists the increased tax is due on the basis of a correct interpretation of the statute and that part of the rule 14.3 the department believes to be valid. It views the transaction as calling only for imposition of a use tax, and hence it says the invalid part of its rule, relating to sales tax, is not at issue. The department thus argues that any claim of discrimination with regard to a use tax must be demonstrated on the basis of its comparison with other use taxes, and cannot be tested by comparison with sales taxes. The department relies on language in our opinion in *City of Ames v. State Tax Commission* (cited in its rule) (tax imposed, not on the sale, but on the basis of delivery of the products involved).

▓▓ The department however cannot so neatly escape from the consequences of the invalidity of the rule as it would apply to sales tax, and to persist in applying the rule as it relates to use taxes. The two cannot be considered in isolation. Our cases make it clear that sales taxes and use taxes are complementary, with interplay between them. *Sturtz*, 373 N.W.2d at 133, *Inter–State Nurseries v. Iowa Dep't of Revenue*, 164 N.W.2d 858, 861 (Iowa 1969); *Dain Mfg. Co. v. Iowa State Tax Comm'n*, 237 Iowa 531, 534, 22 N.W.2d 786, 788 (1946). This view is mandated by the United States Supreme Court in its cases interpreting the commerce clause to the United States Constitution. *Nelson v. Sears, Roebuck & Co.*, 312 U.S. 359, 364, 61 S.Ct. 586, 589, 85 L.Ed. 888, 892 (1941). A use tax can pass constitutional muster only where intrastate purchasers, subject to sales taxes, and interstate purchasers, subject to use taxes, bear an equal tax burden. *Halliburton Oil Well Cementing Co. v. Reily*, 373 U.S. 64, 70, 83 S.Ct. 1201, 1204, 10 L.Ed.2d 202, 207 (1963). The United States Supreme Court looks to the practical effect in determining whether interstate commerce has been impermissibly burdened. *McKesson Corp. v. Division of Alcoholic Beverages & Tobacco*, 496 U.S. 18, 31, 110 S.Ct. 2238, 2247, 110 L.Ed.2d 17, 32 (1990).

Quite aside from proper interpretations of controlling statutes, the practical effect of rule 14.3 was to divide into two classes those goods sold before but delivered after March 1, 1983. The first class, those involving intrastate sales, were assessed a three percent tax. The second class, those involving interstate sales, were assessed a four percent tax. Caterpillar had interstate sales in the latter category. Rule 14.3 did, in its practical operation, discriminate against Caterpillar's access to interstate commerce on those sales. Caterpillar is entitled to a refund.

II. Caterpillar requests that interest be allowed on the refund due. Because no cited statutory or other authority empowers such an allowance, we reject the request.

REVERSED AND REMANDED.