317 So.2d 605 (1975)
CHICAGO BRIDGE & IRON COMPANY
v.
Roland COCREHAM, Collector of Revenue.
No. 55769.
Supreme Court of Louisiana.
June 23, 1975.
Rehearing Denied September 5, 1975.
John D. Wogan, Monroe & Lemann, New Orleans; John W. Werner, Oak Brook, III., for plaintiff-applicant, Chicago Bridge & Iron Co.
James A. Norris, Jr., West Monroe, for defendant-respondent, Collector of Revenue.
Frank W. Middleton, Jr., Benjamin B. Taylor, Jr., Taylor, Porter, Brooks & Phillips, Baton Rouge. Frederic L. Miller, Peters, *606 Ward & Miller, Robert G. Pugh, Shreveport, M. Robert Sutherland, New Orleans, and Victor A. Sachse, Jr., Breazeale, Sachse & Wilson, Baton Rouge, for amicus curiae.
CALOGERO, Justice.
This is a tax refund suit which involves the validity and the application of the Louisiana Sales-Use Tax to the activities of plaintiff, Chicago Bridge & Iron Company (hereinafter referred to as CBI) in connection with major construction projects of the taxpayer in the State of Louisiana between December 1, 1955 and December 31, 1960.
Suit was filed in March, 1964 against the Collector of Revenue for the State of Louisiana for a refund of use taxes ($28,180.33) paid under protest for the taxable period and held in escrow by the Collector pursuant to R.S. 47:1576.
In these same proceedings in August of 1967, the Collector filed a reconventional demand claiming additional use taxes from CBI, for the same audit period, taxes in the sum of $63,309.23 which were not involved in the refund claimed in CBI's original petition.
CBI filed a peremptory exception of prescription to the Collector's reconventional demand as well as an answer denying the Collector's claim for additional use taxes.
Subsequently, the Collector amended his petition to claim attorneys' fees on all amounts, if any, that the court should find due by CBI to the Collector as a result of the controversy, including $28,180.33 dollars paid by CBI under protest and the object of the refund suit.
The trial judge rendered a judgment overruling the exception of prescription filed by CBI against the Collector's reconventional demand, denying CBI's claim for refund of the sum paid under protest, granting judgment to the Collector for the amount claimed in the Collector's reconventional demand and denying all claims of the Collector for attorneys' fees.
After motions for new trial of both parties were denied, both CBI and the Collector appealed.
The Court of Appeal affirmed the judgment of the district court in all respects except that the trial court's judgment denying attorneys' fees to the Collector was reversed, and the Collector allowed 10% attorneys' fees on both the amount of the reconventional demand and on the amount paid by CBI under protest. Chicago Bridge & Iron Company v. Cocreham, 303 So.2d 750 (La.App. 1st Cir. 1974).
We granted writs on application of CBI. Chicago Bridge & Iron Company v. Cocreham, 307 So.2d 633 (La.1975).
The Court of Appeal described the activities of CBI which gave rise to the taxpayer's sales-use tax liability as follows:
"During the taxable period the taxpayer, an Illinois corporation authorized to do and doing business in the State of Louisiana, was engaged in the business of constructing specialized steel plate structures, such as storage tanks, generally for municipalities and corporations. The structures built by the taxpayer consisted primarily of fabricated steel plates assembled by the taxpayer's employees on prepared foundations at the job site. Unfinished steel plates were purchased by the taxpayer from out-of-state suppliers, and carried to the taxpayer's out-of-state shops where the steel plates were fabricated with labor and overhead expenses paid by the taxpayer. After fabrication the steel plates were usually transported at the taxpayer's expense from its out-of-state shops by common carrier to Louisiana job sites." 303 So.2d at 751.
The amount of sales-use tax liability of the taxpayer for the taxable period is the basic issue involved in these proceedings. CBI contends that Louisiana Use Tax is due based simply upon the purchase price *607 paid for the unfinished steel plates to the out of state vendors. That sum has been paid and there is no dispute on this item. The Collector contends that the tax base for Louisiana Sales Use tax includes in addition to the purchase price paid for the unfinished steel plates, the element of labor and shop overhead expenses incurred by CBI in fabricating the steel plates in the taxpayer's out of state shops and the element of transportation expenses (freight) paid by the taxpayer to transport the fabricated steel plates from its out of state shops to Louisiana job sites. The Collector acknowledges that expenses of labor and shop overhead at the construction site are not taxable and such expenses form no part of this litigation.
Accordingly, the two disputed elements in calculating the correct tax basis involved in these proceedings are 1) labor and shop overhead expenses, and 2) transportation expenses (freight).
The tax amounts applicable to these two elements (should they be found legally due) were stipulated at the trial.
It was the transportation expense in the sum of $28,180.33 which CBI paid under protest and made the subject of its refund suit. It was the element of labor and shop overhead expense in the sum of $63,309.23 which was made the subject of the Collector's reconventional demand.
The issues which we will hereinafter consider and resolve in the order in which we propose to consider them are the following:[1]
1. Does the correct tax basis for the sales-use tax for the taxable period properly include the element of labor and shop overhead expenses?
2. If the sales-use tax includes the element of labor and shop overhead expenses, is the statute to that extent unconstitutional?
3. Does the correct tax basis for the sales-use tax for the taxable period properly include the element of transportation expenses?
4. If the sales-use tax includes the element of transportation expense, is the statute to that extent unconstitutional?
If the Collector is correct in one or both of his contentions with respect to the elements of the corrected tax basis of the Louisiana sales-use tax, whether the Collector is entitled to statutory attorneys' fees under the provision of R.S. 47:1512 with respect to either or both of such elements, is an additional issue which we must resolve.
LABOR AND SHOP OVERHEAD EXPENSES AND THE USE TAX
Are labor and shop overhead expenses includable elements of added value in determining the tax basis of the use tax as applied to the out of state manufacturer-user?
The Court of Appeal properly answered the foregoing question in the affirmative. They pointed out that R.S. 47:302 levies a tax upon the use of each item or article of tangible personal property (when the same is not sold within the State); that the measure of the use tax liability is 2%[2] of the "cost price" of each item or article of tangible personal property, R.S. 47:302, subd. A(2); that "cost price" as defined in R.S. 47:301(3) means "the actual cost of the articles of tangible personal property *608 without any deductions therefrom on account of the cost of materials used, labor or service cost, transportation charges or any other expenses whatsoever"; and that properly construed these statutes impose the use tax upon the cost price (or value) at the time the tangible property becomes a part of the mass of the property of the taxing state, including therein the "labor or service costs" (in effect, the labor and shop overhead expenses).
This conclusion of the Court of Appeal is supported by decisions of this Court.
"These provisions [referring to R.S. 47:303A], along with the others above mentioned, clearly indicate that the `use' tax is to be computed on the retail price the property would have brought when importedthat is, its then value or worth." Fontenot v. S.E.W. Oil Corp., 232 La. 1011, 1018, 95 So.2d 638, 640 (1957).
See also this Court's opinion in Halliburton Oil Well Cementing Company v. Reily, 241 La. 67, 127 So.2d 502 (1961), reversed on other grounds, 373 U.S. 64, 83 S.Ct. 1201, 10 L.Ed.2d 202 (1963).
CONSTITUTIONALITY OF USE TAX AS APPLIED TO LABOR AND SHOP OVERHEAD EXPENSES OF THE OUT OF STATE MANUFACTUREURSER.
CBI takes the position that the use tax as applied to the elements of labor and shop overhead (and transportation expenses as wellthis will be discussed hereinafter) is unenforceable because it is illegally discriminatory principally in violation of the protection guaranteed in Article I, § 8, Cl. 3 (the commerce clause) of the United States Constitution.
As this is the central issue in this litigation it is well that we briefly review Louisiana's sales-use tax law and pertinent prior jurisprudence.
R.S. 47:302 provides for the imposition of a tax "at the rate of 2 per centum (2%) of the sales price of each item or article of tangible personal property when sold at retail in that state . . . ."
It imposes another tax "at the rate of two per centum (2%) of the cost price of each item or article of tangible personal property when the same is not sold but is used . . . in this state . . . ." This latter tax is the use tax. It is reduced by the amount of a similar sales or use tax paid on the item in a different state. R.S. 47:305.
The purpose of the sales-use tax scheme is to make all tangible personal property used or consumed in the state subject to a uniform tax burden irrespective of whether it is acquired in the state, making it subject to the sales tax, or acquired from without the state, making it subject to the use tax at the same rate.
The United States Supreme Court in Henneford v. Silas Mason Co., 300 U.S. 577, 57 S.Ct. 524, 81 L.Ed. 814 (1937), held that the use tax, a "compensating tax" (inasmuch as it complements the sales tax), is not, as applied to chattels purchased in another state and used in the taxing state thereafter, a violation of the commerce clause.[3]
The litigants herein accordingly concede the validity of the sales-use tax scheme.
CBI contends, however, that as applied to labor and shop overhead of the out of state manufacturer-user, the tax is discriminatory because it is not similarly imposed upon the in-state manufacturer-user.
If they are correct in their contention that the use tax does not bear against labor *609 and shop overhead of the in-state manufacturer-user it is evident that the allegation of unconstitutionality is correct, for in Halliburton, supra, the United States Supreme Court held precisely that. In the Halliburton litigation this Court had earlier concluded that the proper comparison (in determining whether there is unconstitutional discrimination) should be between the use tax on the assembled equipment and the sales tax on the same equipment if it were sold. Based upon this comparison this Court had found the out of state manufacturer-user to be on the same tax footing with respect to the equipment used as his competitor who purchases (in-state) from the retailer, rather than manufacturing his own equipment. The United States Supreme Court, however, took the position that the proper comparison is between the out of state manufacturer-user and the instate taxpayer most similarly situated, namely, the local manufacturer-user.
Finding discriminatory effect in this comparison (because CBI pays use tax on labor and shop overhead, while a local manufacturer-user pays neither sales nor use tax on labor and shop overhead) the United States Supreme Court in Halliburton concluded that the Louisiana Use Tax as thus applied was invalid as discriminating against interstate commerce in violation of the commerce clause. Equal treatment for in-state and out of state taxpayers similarly situated, it was said, is the condition precedent for a valid use tax on goods imported from out of state.
The United States Supreme Court in finding this unequal treatment had relied upon the following stipulation between the Collector of Revenue for the State of Louisiana and the taxpayer:
"If Halliburton had purchased its materials, operated its shops, and incurred its Labor and Shop Overhead expenses at a location within the State of Louisiana, there would have been a sales tax due to the State of Louisiana upon the cost of materials purchased in Louisiana and a Use Tax on materials purchased outside of Louisiana; but there would have been no Louisiana sales tax or use tax due upon the Labor and Shop Overhead." 373 U.S. at 67, 83 S.Ct. at 1202-03, 10 L.Ed.2d at 205. (Emphasis provided).
The import of Halliburton is best illustrated by Justice Brennan's comment, in his concurring opinion, that "the Court holds no more than that if Louisiana chooses to levy such a use tax it cannot constitutionally exempt in-state manufacturer-users as it now does; it must tax `the privilege of use' within the State of the property of such users at full value and at the same rates." 373 U.S. at 77-8, 83 S.Ct. at 1208, 10 L.Ed.2d at 211.
Perhaps prompted by this delimitation of the Halliburton holding, the Collector makes the following contention (one accepted as proven by the Court of Appeal): while the stipulation agreed upon by the Collector in the Halliburton case was on its facts applicable to the very audit period involved in this litigation and while the Collector in that case agreed that there would have been no Louisiana Sales Tax or Use Tax due upon labor and shop overhead by the in-state manufacturer-user during the given period, the Collector takes the position here that the stipulation to which he had agreed in the Halliburton litigation was simply erroneous.
He is, perhaps, entitled to make that allegation in this lawsuit. And if he is correct, it matters not that in an earlier separate lawsuit his counsel had mistakenly taken a position contrary to the present one as to the applicability and application of the sales-use tax under the statutes, regulations and collection policies of the Department of Revenue.
We must then determine from the record before us and the laws of the State of Louisiana whether or not during the audit period in question, in-state manufacturer-users were or were not required to pay sales *610 or use tax upon labor and shop overhead incurred at their in-state plant.
At the outset we must consider the activities of CBI and their in-state counterpart whose operations are being scrutinized in connection with the use tax. CBI's activity is that of a construction contractor. The company does not inventory prefabricated parts for interchangeable use and did not supply component parts to owners or contractors for construction by them.
We also know that a construction contractor is a consumer, a purchaser at retail who is subject to payment of sales tax, for
"A contractor who buys building material is not one who buys and sellsa trader. He is not a `dealer,' or one who habitually and constantly, as a business, deals in and sells any given commodity. He does not sell lime and cement and nails and lumber.
"His undertaking is to deliver to his obligee some work or edifice or structure, the construction of which requires the application of skill and labor to these materials so that, when he finishes his task, the materials purchased are no longer to be distinguished, but something different has been wrought from their use and union. The contractor has not resold but has consumed the materials. Sales to contractors are sales to consumers. . . ." State v. J. Watts Kearny & Sons, 181 La. 554, 559, 160 So. 77, 78 (1935) (Emphasis provided).
See also State v. Owin, 191 La. 617, 186 So. 46 (1938) and Claiborne Sales Company, Inc. v. Collector of Revenue, 233 La. 1061, 99 So.2d 345 (1957).
With respect to such consumer the taxable incident in connection with the sales tax is the in-state purchase of materials by him.
The narrow question we are here considering is whether under Louisiana law the in-state purchaser who, in performing his construction contracts, in part fabricates or manufactures off site at his in-state plant, is required to pay, in addition to the sales tax on the raw materials purchased instate, a use tax on the labor and shop overhead which goes into fabrication of such equipment. In effect, has the Louisiana Legislature placed upon the cost of intra-state labor and shop overhead a use tax, in the nature of a value added tax?
The Collector says that the Legislature has done just that. In support of his contention he relies upon the provisions of R.S. 47:302, the regulations of the Collector of Revenue enacted or adopted pursuant to the authority of R.S. 47:1511, and the collection policies and procedures of the Department of Revenue during the audit period.
R.S. 47:302 does indeed levy a tax upon the use of each item or article of tangible personal property. The statute in distinguishing the use tax from the sales tax goes on to declare that the tax is at the rate of 2% of the cost price of each item or article of tangible personal property when the thing is not sold but is used in this state.
The statute does not precisely describe any use or value added tax upon the cost of intra-state labor and shop overhead. Nor does it clearly preclude the imposition of such a tax. At best for the Collector it might be said that the statute in this respect is unclear, or imprecise.
The general rule is that where a tax statute is susceptible of more than one reasonable interpretation, the construction favorable to the taxpayer is adopted. Brown v. LaNasa, 244 La. 314, 152 So.2d 33 (1963); United Gas Corp. v. Fontenot, 241 La. 564, 129 So.2d 776 (1961).
The Collector next directs our attention to several of the regulations of the Department of Revenue in effect during the audit *611 period.[4] He suggests that a review of these Regulations will indicate that the Department policy during the audit period was to tax the in-state manufacturer-user on the cost of labor and shop overhead.
Our review of those regulations does not cause us to so conclude.
If anything, review of the regulations leaves us with the opposite conclusion. Article 2-3 and its history are particularly revealing. Prior to 1963, Article 2-3, concerning the use tax, made no reference whatever to the imposition of the use tax upon labor and shop overhead of the instate manufacturer-user. It provided as follows:
"Article 2-3. USE TAXThe Louisiana General Sales Tax Act imposes a tax on the use, consumption, distribution and storage for use or consumption in this State, of tangible personal property purchased in such manner that the sales tax does not apply thereto.
"The Use Tax applies to the use of property purchased in interstate commerce, or in other States for the purpose of use in this State after interstate commerce has ended. For purposes of taxation, interstate commerce ends when purchased property reaches the consignee, and comes to rest within the State. The tax does not attach until the property has come to rest in the State of Louisiana.
"Generally, it may be said that the Use Tax applies to the use of property in this State, the sale of which would be subject to tax had there been a purchase within this State. The Use Tax does not apply upon the use of any property which has been subjected to a sales tax in another State at a rate equal to or greater than the rate of tax imposed by the Louisiana General Sales Tax Act, nor does the Use Tax apply upon the use of any property which is exempt from the tax imposed upon the sale at retail by the Louisiana General Sales Tax Act. The two Taxes, Sales and Use stand as complements to each other and taken together provide a uniform tax upon either the sale at retail or use of all tangible personal property irrespective of where it may have been purchased.

"The Use Tax is based on the `cost price' of the tangible personal property. The `cost price' means the actual cost of the property including transportation costs incurred in transporting the property to the place where it is to be used. No deduction is allowed for materials used, labor, service cost, transportation charges or any other expenses whatsoever."
After the decision in Halliburton, in which the United States Supreme Court declared unconstitutional Louisiana's Use Tax as applied to shop overhead and labor of the out of state manufacturer-user because they found based upon the stipulation no similar tax (sales or use) imposed upon the local competitor, namely, the instate manufacturer-user, the Collector thereupon amended article 2-3 effective August 1, 1963 so as to impose the use tax upon the in-state manufacturer-user. Article 2-3 was amended to read as follows:
"Article 2-3. USE TAX-The Louisiana use tax is complementary to the Louisiana sales tax and applies in all cases where tangible personal property is not sold at retail but is used or consumed in Louisiana or stored for use or consumption in Louisiana. Thus, the Louisiana use tax applies not only to property imported for use or consumption in Louisiana or stored for use or consumption in Louisiana but also to property manufactured in Louisiana and used or consumed *612 in Louisiana or stored for use or consumption in Louisiana by the manufacturer.

"The basis for computing the use tax is the `cost price' of the article subject to the tax. `Cost price' is the fair market value of the property at the time it becomes subject to Louisiana tax jurisdiction. For new items fair market value is the price paid by the Louisiana userincluding cost of materials, labor, shop overhead and transportation. For items which have been imported which have not been newly acquired by the user, fair market value is the price established in the Louisiana secondhand market for similar items. When no such market exists, the fair market value is determined by allowing a deduction for reasonable depreciation on the new cost plus cost of improvements.
". . . ."
The Collector's changing Article 2-3, or "clarifying" it as he contends, in the foregoing specifics, would not standing alone cause us to conclude that during the subject audit period (prior to the 1963 amendment to Article 2-3) there was no applicable use tax imposed upon the in-state manufacturer-user. However, coupled with the provisions of the statute and the Halliburton stipulation it seems perfectly clear to us that this was the case. Certainly some effect must be attributed to the fact that the Collector of Revenue in that litigation, speaking of the period which is involved in the subject audit, declared rather solemnly on a point which ultimately governed the outcome of that litigation, that had the taxpayer "purchased his material, operated his fabricating shops and incurred his labor and shop overhead expenses . . . at a location within the State of Louisiana,. . . there would have been no Louisiana sales tax or use tax due upon the labor and shop overhead."
The Collector attempts to offset the import of the Halliburton stipulation, the amendment to the Regulations in 1963 (Article 2-3) and the lack of clarity and precision of R.S. 47:302 (to be most generous with the Collector's position) by relying upon the testimony of witnesses at trial concerning the Department's policy during the subject audit period and the circumstances surrounding execution of the "erroneous" Halliburton stipulation.
That testimony was less than conclusive. In fact in some instances it supports CBI's rather than the Collector's position. In any event taxes are imposed by the Legislature, not by the Department of Revenue.
We conclude that pertinent to this case the use tax did not bear against labor and shop overhead of the in-state manufacturer-user, just as was stipulated to have been the case in Halliburton.
R.S. 47:302, to the extent that it imposes a use tax complementing the sales tax, was designed to, and in fact did, impose a tax upon tangible personal property not purchased within the State but rather imported and used therein. Furthermore it does not place a use tax, or value added tax, upon the cost of intra-state labor and shop overhead.
Finding that the use tax is imposed upon labor and shop overhead of the out of state manufacturer-user and that neither sales nor use tax is imposed upon the in-state manufacturer-user, we are constrained by the United States Supreme Court decision in Halliburton, to conclude that the Louisiana Use Tax as applied to labor and shop overhead of the out of state manufacturer-user is unconstitutional and therefore unenforceable, because violative of the commerce clause of the United States Constitution.
TRANSPORTATION EXPENSE AND THE USE TAX
Are transportation expenses (freight) an includable element of added value in determining the tax basis of the use tax as applied *613 to the out of state manufactureruser?
Both lower courts answered this question in the affirmative. They determined that the Collector could properly include in CBI's use tax basis the cost to CBI of transporting the fabricated steel components by rail carrier from its out of state shop to job sites located in Louisiana. They relied specifically upon Mouton v. Klatex, Inc., 238 So.2d 1 (La.App. 1st Cir. 1970), a decision which permitted the inclusion in the use tax basis, of transportation expenses incurred by the taxpayer on goods purchased in Arkansas and shipped into Louisiana by common carrier for the account of the purchaser.
Mouton v. Klatex was, of course, correct, as was the Court of Appeal below, in holding the use tax by its terms applicable to such transportation expenses (freight). The identical reasons supporting this interpretation are discussed more fully hereinabove in discussion of the labor and shop overhead expenses and the literal application of the use tax. The statute defines cost price as "the actual cost of the articles of tangible personal property without any deductions therefrom on account of the cost of materials used, labor or service cost, transportation charges or any other charges whatsoever."
CONSTITUTIONALITY OF USE TAX AS APPLIED TO TRANSPORTATION EXPENSES OF THE OUT OF STATE MANUFACTURER-USER
Having found that transportation cost is an includable element (added value) in determining the use tax basis as applied to the out of state manufacturer-user, we turn now to the question of whether the tax as so applied is unenforceable because illegally discriminatory in violation of the protection guaranteed by the commerce clause of the United States Constitution.
Neither the sales nor use tax is imposed upon the in-state manufacturer-user for comparable transportation costs. R.S. 47:302(A)(1), 47:301(13). See also Art. 2-7 of the Regulations of the Department of Revenue which asserts that the purchaser has no sales tax liability where "the services rendered by the railway company or other transporting agency are rendered to . . . the purchaser."
CBI's position with respect to this discriminatory application is basically the same as is urged with respect to the labor and shop overhead aspect of the case. They contend that the out of state manufacturer-user who at his own expense contracts for shipment to an in-state job site pays the use tax on the "cost" element attributable to transportation, while his competitor who purchases raw materials instate, contracts for shipment to his in-state plant, then contracts for shipment of fabricated items to job site, pays no sales or use tax upon either such element of transportation costs.
The Collector's argument is essentially that transportation charges are effectively included within the sales price of the instate sale at retail, for that price includes transportation charges required to bring the item to the Louisiana retailer. Furthermore, he contends that the net economic consequence incident to the element of transportation is dictated by the purchaser's choice of supply rather than whether state boundaries are crossed.[5]
*614 While CBI is complaining of use tax applying to the cost of transporting items fabricated at their out of state plant to instate job sites, the Collector's argument focuses upon inclusion of prior transportation cost in the retail sales price in the instate purchase situation. While the two situations are dissimilar, the Collector's argument, to the extent that it may have merit, is sufficiently analogous. We therefore consider hereinafter the treatment of transportation cost and the comparison between the in-state purchaser's retail sales price (sales tax) and the out of state purchaser's "cost" (use tax).
The Collector's argument that transportation cost included as a part of the retail price in the sales tax situation is the counterpart of the transportation cost taxable to the out of state purchaser as an element of the use tax, has merit only if we consider items which originate out of state and even then it does not account for the disparity in treatment with respect to in-state retailer shop to in-state plant portion of the shipment (recall that in the use tax situation all transportation costs to the consignee's depot or place of first use within the state are taxable as part of the use tax, while the in-state purchaser may avoid payment of sales tax on the portion of the shipment from the retail shop to in-state plant or job site by providing his own transportation or contracting himself with the common carrier).
There is no merit to the Collector's argument that CBI pays no more tax, sales and/or use, on the transportation cost of materials purchased out of state and delivered in-state than does his Louisiana competitor purchasing locally who pays sales tax on the retail price of purchased goods. There is a fallacy in this comparison which is pointed up (analogously) in the United States Supreme Court's decision in Halliburton. The proper comparison of CBI's position is not with the purchaser from the nearby retailer whose retail sales price perhaps includes prior transportation costs but with the in-state competitor of CBI who contracts for his own transportation of in-state purchased material from retailer's shop to plant (and as more properly analogous to CBI's situation in this case, fabricated items from in-state plant to job site).
Considered in this perspective discrimination is evident since the out of state purchaser pays use tax fully on the element of transportation cost from state boundary to job site (or plant) while the in-state purchaser pays no tax (sales or use) on transportation cost from in-state retail shop to plant (and/or job site).
In the present case the Collector is demanding $28,180.33 in use tax charges on inter-state transportation costs that he would not be demanding if the transportation costs were incurred in intra-state transportation (assuming of course that retail purchaser has independently contracted for shipment from retail shop). Nor would he, in the intra-state situation, be indirectly realizing sales tax (by inclusion in the retail sales price of transportation charges for shipment to the in-state retailer) on the transportation costs from in-state retailer to in-state shop and from in-state shop to job site.
While Halliburton did not concern the transportation cost element of the Louisiana Use Tax, the holding there by the *615 United States Supreme Court is just as applicable to transportation costs as to the labor and shop overhead expense, which issue was before them. That court stated
"The conclusion is inescapable: equal treatment for in-state and out-of-state taxpayers similarly situated is the condition precedent for a valid use tax on goods imported from out-of-state." 373 U.S. at 70, 83 S.Ct. at 1204, 10 L.Ed.2d at 207.
The Collector relies principally upon Mouton v. Klatex, supra, wherein writs were denied by this Court, 256 La. 873, 239 So.2d 365 (1970), and as to which appeal was dismissed by the Supreme Court of the United States, 401 U.S. 968, 91 S.Ct. 1192, 28 L.Ed.2d 318 (1971), in each instance without opinion.
The principal holding in Mouton was that Louisiana use tax does include transportation costs in its basis. The decision only made passing reference to the fact that such imposition is constitutional.[6] There was no further discussion of the matter, and it was not clear from the opinion that dissimilar treatment was afforded transportation costs under the Louisiana sales tax (relative to the in-state purchaser). We do not consider that decision controlling or persuasive. Nor do we find helpful the case of Colonial Pipeline Company v. Clayton, 275 N.C. 215, 166 S.E.2d 671 (1969) cited by the Collector, because the same inappropriate' comparison which the Collector argues in this case was made by the North Carolina Supreme Court there when they noted in distinguishing Halliburton that in the sales tax situation, transportation charges are necessarily a part of the price a retailer pays (and/or charges) for his goods.
We conclude that insofar as the use tax is imposed upon the element of transportation cost for shipping CBI's fabricated component parts from out of state plant to in-state job site, it is unconstitutional and unenforceable because in violation of the commerce clause of the United States Constitution.
Because we have ruled favorably in connection with the taxpayer's contentions with respect to the transportation element of the use tax basis (the subject of CBI's tax refund claim) and in connection with the labor and shop overhead element of the use tax basis (the subject of the Collector's reconventional demand), we need not consider the issue relating to the statutory attorneys' fees, as to which there was partial disagreement by the two lower courts in this litigation.
For the foregoing reasons the judgment of the Court of Appeal is reversed, the reconventional demand of the Collector of Revenue demanding additional use tax is dismissed with prejudice, and there is judgment entered herein in favor of Chicago Bridge & Iron Co., and against the Collector of Revenue of the State of Louisiana decreeing them to be entitled to refund of taxes earlier paid in the amount of $28,180.33 with interest thereon at the rate of 2% per annum from March 4, 1964 until paid and for such costs as may otherwise be legally recoverable.
NOTES
[1] We pretermit a decision on the merit of CBI's peremptory exception of prescription to the Collector's reconventional demand. A resolution of that issue is not necessary in light of the decision, reached herein, that the Collector is not entitled to recover the taxes which are the subject of his reconventional demand.
[2] We note that during the audit period in question the State sales tax rate was 2%. That rate today is 3%, because in 1970 the Legislature passed Act 256, incorporated into the Revised Statutes as R.S. 47:321, imposing an additional State sales tax of 1%.
[3] "When the account is made up, the stranger from afar is subject to no greater burdens as a consequence of ownership than the dweller within the gates. The one pays upon one activity or incident, and the other upon another, but the sum is the same when the reckoning is closed." Henneford v. Silas Mason Co., 300 U.S. at 584, 57 S.Ct. at 527, 81 L.Ed. at 819.
[4] The cited regulations of "Rules and Regulations Promulgated in connection with Louisiana General Sales Tax" issued by the Collector of Revenue on August 1, 1954 and January 1, 1958 are: Articles 2-2(a), 2-3, 2-5, 2-7, 2-8, 2-33, 2-37, 2-47, 2-49, 2-50 and question No. 7 of Questions and Answers.
[5] The Collector points out that hypothetically there can be a circumstance where a customer who purchases from a near-by, but out of state, vendor may pay less in use tax, than another customer, who purchases from the same vendor's outlet which happens to be in-state but more distant, will pay in sales tax (the sales tax on a price of the in-state purchase which includes a greater transportation cost). For example, a Biloxi, Mississippi manufacturer of refrigerators might have two outlets, one in Biloxi and one in Monroe. A New Orleans customer buying from the Biloxi outlet would be required to pay a use tax on the cost of transporting the refrigerator from Biloxi to New Orleans. A second New Orleans customer, buying his refrigerator from the Monroe outlet (and contracting his own common carrier shipment to New Orleans) would be required to pay a sales tax on the purchase price, part of which would likely represent the freight charge for transportation from Biloxi to Monroe. As the cost of Biloxi-New Orleans transportation would be less than the cost of Biloxi-Monroe transportation, the use tax, chargeable to the out of state purchaser, would be less in this special situation than the sales tax chargeable to the in-state purchaser. This argument, while interesting and based upon a possible but unlikely set of hypothetical facts, does not disprove the very real discrimination suffered by CBI by comparison with its counterpart in-state manufacturer-user, relative to sales-use tax and transportation cost, which is discussed more fully elsewhere in this opinion.
[6] "We are also satisfied that under the Henneford decision, Louisiana may constitutionally so include transportation charges in the cost price or tax basis for imposition of the use tax." 238 So.2d at 3.

Henneford v. Silas Mason Co., 300 U.S. 577, 57 S.Ct. 524, 91 L.Ed. 814 (1937) did indeed mention that the State of Washington use tax statute incorporated in the use tax basis cost of transportation (presumably transportation from out of state retail outlet to in-state point of first use). And, of course, Henneford held the statute there under consideration to be constitutional. However, the opinion in Henneford was devoted exclusively to the validity of the use tax in its overall application. It did not specifically discuss the aspect of transportation cost inclusion in the use tax basis, nor did it assert whether the State of Washington excluded comparable transportation cost from its sales tax basis, nor did it focus upon an allegation of discrimination in this respect.