336 So.2d 285 (1976)
The DOW CHEMICAL COMPANY
v.
Joseph N. TRAIGLE, etc.
No. 10768.
Court of Appeal of Louisiana, First Circuit.
June 30, 1976.
Rehearing Denied August 27, 1976.
Writ Refused November 24, 1976.
*286 Robert G. Pugh, Shreveport, for appellant.
R. Gordon Kean, Jr., Baton Rouge, for appellee.
Before LANDRY, COVINGTON and PONDER, JJ.
PONDER, Judge.
This is a tax refund suit brought by Dow Chemical Company (Dow) against Joseph N. Traigle, Collector of Revenue, State of Louisiana (Collector), pursuant to La.R.S. 47:1576. Dow seeks to be refunded $167,979.23, representing use taxes it paid under protest for the tax period January 1, 1970, through June 30, 1974, (audit period) together with interest at the rate of two per cent (2%) per annum. The Collector reconvened praying for ten per cent (10%) attorney's fees as provided in La.R.S. 47:1512.
The court below, relying on Chicago Bridge & Iron Company v. Cocreham, La., 317 So.2d 605 (1975) and Halliburton Oil Well Cementing Company v. Reily, 373 U. S. 64, 83 S.Ct. 1201, 10 L.Ed.2d 202 (1963), granted summary judgment in favor of Dow for the entire relief prayed for and dismissed the Collector's reconventional demand. The Collector has timely perfected this appeal. We affirm.
Dow operates a manufacturing facility at Plaquemine, Louisiana, where it manufactures chemicals and related products. The plant requires sophisticated machinery, some of which is assembled by Dow's own employees at other Dow plants located out-of-state. The raw materials, and all other articles necessary for the construction of the machinery, are purchased outside of Louisiana. Completed units of machinery are then shipped to the plant.
Dow reported this machinery on its use tax return, but paid use tax on the basis of its material costs only. The Collector contends that Dow must also pay use tax on all labor, overhead and interstate transportation costs incurred in the production of each unit. The principal sum at issue herein, $167,979.23, represents the amount the Collector asserts is due.
Dow contends, and the trial court held, that the inclusion of out-of-state labor, shop overhead and transportation costs in assessing a use tax on an out-of-state manufacturer-user is violative of Article 1 § 8, Clause 3 (the commerce clause) of the United States Constitution when an instate manufacturer-user pays tax (sales) on material costs only. We agree. See Halliburton Oil Well Cementing Company, supra; and Chicago Bridge & Iron Company, supra.
The Collector asserts that the court's findings in those two cases that no use tax is levied on labor, overhead and transportation against an in-state manufacturer-user is erroneous; that the U.S. Supreme Court in Halliburton, supra, relied upon an erroneous stipulation that an in-state manufacturer-user would not have paid tax on labor or shop overhead, and that the Louisiana Supreme Court also fell into this error in Chicago Bridge & Iron, supra, by following the Halliburton case. The Collector's position is that: "(1) The Louisiana Statute clearly imposes a use tax on both the out-of-state (`foreign') manufacturer-user as well as in-state manufacturer-user on the incremental value of fabrication *287 and freight;" and, "(2) In the administration of the use tax, it is collected equally from in-state manufacturer-users as well as foreign manufacturer-users. . ."
These arguments, made by the Collector in Chicago Bridge & Iron, supra, were answered thus by the Louisiana Supreme Court:
"The narrow question we are here considering is whether under Louisiana law the in-state purchaser who, in performing his construction contracts, in part fabricates or manufactures off site at his in-state plant, is required to pay, in addition to the sales tax on the raw materials purchased in-state, a use tax on the labor and shop overhead which goes into fabrication of such equipment. In effect, has the Louisiana Legislature placed upon the cost of intra-state labor and shop overhead a use tax, in the nature of a value added tax?
"The Collector says that the Legislature has done just that. In support of his contention he relies upon the provisions of R.S. 47:302, the regulations of the Collector of Revenue enacted or adopted pursuant to the authority of R.S. 47:1151, and the collection policies and procedures of the Department of Revenue during the audit period.
"R.S. 47:302 does indeed levy a tax upon the use of each item or article of tangible personal property. The statute in distinguishing the use tax from the sales tax goes on to declare that the tax is at the rate of 2% of the cost price of each item or article of tangible personal property when the thing is not sold but is used in this state.
"The statute does not precisely describe any use or value added tax upon the cost of intra-state labor and shop overhead. Nor does it clearly preclude the imposition of such a tax. At best for the Collector it might be said that the statute in this respect is unclear, or imprecise.
"The general rule is that where a tax statute is susceptible of more than one reasonable interpretation, the construction favorable to the taxpayer is adopted. Brown v. LaNasa, 244 La. 314, 152 So.2d 33 (1963); United Gas Corp. v. Fontenot, 241 La. 564, 129 So.2d 776 (1961).
"The Collector next directs our attention to several of the regulations of the Department of Revenue in effect during the audit period. (Footnote omitted) He suggests that a review of these Regulations will indicate that the Department policy during the audit period was to tax the in-state manufacturer-user on the cost of labor and shop overhead.
"Our review of those regulations does not cause us to so conclude.
"The Collector's changing Article 2-3, or `clarifying' it as he contends... would not standing alone cause us to conclude that during the subject audit period (prior to the 1963 amendment to Article 2-3) there was no applicable use tax imposed upon the in-state manufacturer-user. However, coupled with the provisions of the statute and the Halliburton stipulation it seems perfectly clear to us that this was the case. Certainly some effect must be attributed to the fact that the Collector of Revenue in that litigation, speaking of the period which is involved in the subject audit, declared rather solemnly on a point which ultimately governed the outcome of that litigation, that had the taxpayer `purchased his material, operated his fabricating shops and incurred his labor and shop overhead expenses . . . at a location within the State of Louisiana,. . . there would have been no Louisiana sales tax or use tax due upon the labor and shop overhead.
"The Collector attempts to offset the import of the Halliburton stipulation, the amendment to the Regulations in 1963 (Article 2-3) and the lack of clarity and *288 precision of R.S. 47:302 (to be most generous with the Collector's position) by relying upon the testimony of witnesses at trial concerning the Department's policy during the subject audit period and the circumstances surrounding execution of the `erroneous' Halliburton stipulation.
"That testimony was less than conclusive. In fact in some instances it supports CBI's rather than the Collector's position. In any event taxes are imposed by the Legislature, not by the Department of Revenue.
"We conclude that pertinent to this case the use tax did not bear against labor and shop overhead of the in-state manufacturer-user, just as was stipulated to have been the case in Halliburton.

"R.S. 47:302, to the extent that it imposes a use tax complementing the sales tax, was designed to, and in fact did, impose a tax upon tangible personal property not purchased within the State but rather imported and used therein. Furthermore it does not place a use tax, or value added tax, upon the cost of intra-state labor and shop overhead.
"Finding that the use tax is imposed upon labor and shop overhead of the out of state manufacturer-user and that neither sales nor use tax is imposed upon the in-state manufacturer-user, we are constrained by the United States Supreme Court decision in Halliburton, to conclude that the Louisiana Use Tax as applied to labor and shop overhead of the out of state manufacturer-user is unconstitutional and therefore unenforceable, because violative of the commerce clause of the United States Constitution."
The court also held that "insofar as the use tax is imposed upon the element of transportation cost for shipping CBI's fabricated component parts from out of state plant to in-state job site, it is unconstitutional and unenforceable because in violation of the commerce clause . . ."
Thus, even though the members of this panel may feel otherwise, and would decide differently were the case one of first impression, nevertheless, we are constrained to decide this case as we do because of the above holding.
The Collector further argues that since the cases of Halliburton, and Chicago Bridge & Iron, supra, covered a different audit period from the instant case, their factual determination that an in-state manufacturer-user does not pay taxes on labor, shop overhead on items manufactured at in-state plants is not controlling in this case.
The Collector has neither cited, nor can we find any change in the pertinent statutory law to that effect. Policy changes and Department of Revenue Regulations are insufficient to impose taxes, which are clearly a legislative function. Chicago Bridge & Iron, supra;[1] Article X Section 1, Louisiana Constitution of 1974. We therefore conclude that the Louisiana use tax as applied to labor, shop overhead, and transportation of the out-of-state manufacturer-user is unconstitutional, being violative of the commerce clause of the United States Constitution.
The Collector next argues that the summary judgment was improper as there is a material issue of fact with regard to the appropriate price of raw materials to be utilized in determining the use tax for the audit periods in question.
We have examined both the depositions and the answers to interrogatories and cannot agree that they raise any material issue of fact. Specifically, the Collector refers to the deposition of a senior accountant of Dow that was introduced in *289 evidence in asserting that the deposition raises a serious question as to whether Dow used the "actual costs" of the materials used in manufacturing the machinery at issue, or an improper "standard cost" instead, in establishing the tax basis on the materials. Although Dow's petition does not put at issue the amounts that the Collector demanded due as use tax for the materials, and the Collector did not amend his reconventional demand to put the use tax paid on materials at issue, it is the Collector's contention that the introduction of the deposition without objection enlarged the pleadings to cover that issue in accordance with Article 1154 of the Code of Civil Procedure; and, that summary judgment was therefore improper. The Collector cites Hancock Bank v. Alexander, 227 So.2d 183 (La.App. 3rd Cir. 1969); reversed on other grounds, La., 237 So.2d 669 (1970), for the proposition that the introduction of a deposition on the trial of the motion for summary judgment without objection can amend or enlarge the pleadings in accordance with Article 1154 of the Code of Civil Procedure. We do not believe that we must either accept or reject the Collector's interpretation of Hancock Bank, supra, because we find that the subject deposition does not effectively raise the issue as to what cost basis was used by Dow in paying use tax on the materials. Mere hints of error in establishing "costs" are insufficient to raise the issue. The person being deposed expressly stated on several occasions that he did not understand or know Dow's tax computation or reporting procedure. We are unwilling to hold that the pleadings were enlarged by the introduction of such insubstantial and admittedly possibly inaccurate "factual" testimony.
Collector points also to answers to interrogatories as raising a question of material fact as to cost of raw materials. The evidently relevant portions of these answers read as follows:
"Answer to Interrogatory No. 12
. . . . . .
These IDT (Interdivisional Transfers) are of two types. Most of the IDT's (although they may be of varying format) deal with the transfer of specific items, that is cell parts or ethylene-oxide catalysts. A few of the IDT's, however, do not charge directly for specific items, but, rather, call for an additional interdivisional charge to make up the difference between the standard cost shown on the IDT's described above and the actual cost to the plant in Texas or Arkansas making the equipment.
. . . . . .
"Answer to Interrogatory No. 15
With regard to each of the IDT's attached as part of the answer to Interrogatory No. 12, the cost price reported to Louisiana for use tax purposes is the material cost which is shown on each IDT.
. . . . . .
"Answer to Interrogatory No. 17
With regard to each of the items listed in the IDT's attached as part of the answer to Interrogatory No. 12:
(a) The raw material cost is the same as the amount reported to the State of Louisiana for use tax purposes, and which is described in the answer to Interrogatory No. 15. Some of the raw materials were purchased from third persons and some were manufactured by Dow at certain of its other divisions. In either case, the raw material cost was the actual cost of the raw material used in the item upon which the tax was reported and paid.
(b) With regard to the raw materials manufactured by Dow or any of its divisions, and used by another division, the standard cost of such raw materials was the manufactured cost of the materials. Attached to the answer to this interrogatory is Dow's Accounting Policy and Procedure Number AP-1002, Pages 1 and 2 (Exhibit "B") which lists all of *290 the items that are included in its standard cost.
"Answer to Interrogatory No. 19
The cost of each of the items described in the answer to Interrogatory No. 12 appears on Dow's financial records in the following respects:
(a) At standard cost (which ultimately becomes IDT cost) upon the inventory records of the division manufacturing the item.
. . . . . .
"Answer to Interrogatory No. 26
Yes, only the raw material costs were used in Texas and California as the basis of paying the use tax due on similar taxable items in those states. Michigan, the only other state involved, does not tax manufacturing equipment."
As above, we cannot see that these, even if they have the effect of enlarging the pleadings, raise any question of material fact.
The Collector argues alternatively, that when a taxpayer such as Dow, files suit to receive a refund, the entire tax liability of the taxpayer is put at issue, citing Lewis v. Reynolds, 284 U.S. 281, 52 S.Ct. 145, 76 L.Ed. 293 (1931) and Missouri Pacific Railroad Co. v. U. S., 338 F.2d 668, 168 Ct.Cl. 86. We do not find these cases applicable to the facts of this case. These cases hold that under the Internal Revenue Code the federal government can plead as off-set any amount due the government.
In the instant case, the alleged "related aspect," i. e. the amount due for material cost was never properly presented as an issue.[2] Dow's suit put at issue only the use tax due on labor, shop overhead and transportation costs. The Collector did not reconvene for any tax due on the material costs even after it supposedly suspected impropriety on Dow's part, which as stated above, was too vague and insubstantial to be effective in enlarging the pleadings.[3] Therefore, we expressly conclude that the issue of the amount of tax due on material costs is outside the scope of this suit.
Finally, the Collector argues that his affidavit in opposition to the motion for summary judgment affirmatively declares that it is the practice of the Department of Revenue to charge in-state manufacturer-users as use tax on labor, overhead and transportation, and that this raised a material issue of fact. We disagree. The mere policy of the Collector cannot impose a tax. The legislature is solely invested with such power. Chicago Bridge & Iron, supra. Therefore the policy of the Collector is irrelevant and immaterial on this point.
For the above and foregoing reasons, the judgment of the lower court is affirmed insofar as it grants judgment against the Collector for $167,979.63, with interest as provided by law and denies the reconventional demand. The Collector is assessed with those costs permitted by law.
AFFIRMED.
NOTES
[1] See especially the following quotation from p. 612:

"In any event taxes are imposed by the Legislature, not by the Department of Revenue."
[2] The lower court stated in written reasons "that the Collector is barred from raising the issue of the tax base or the computation of the use tax [on the materials] since it admitted in its answer to plaintiff's petition that the sum paid by plaintiff in response to its audit and demand was correct." We do not find such an admission in the record.
[3] The Missouri Pacific Railroad case, supra, interestingly enough has the following quotation on pages 671-672:

" . . . the government has the burden of going forward and showing that there is a reasonable basis in fact or in law for its setoff defense. By this we mean that the government has to demonstrate that it has some concrete and positive evidence as opposed to a mere theoretical argument, that there is some substance to its claim and is not a mere fishing expedition or a method of discouraging taxpayers from seeking refunds on meritorious clauses because of the cost that would result in proving each and every item involved in a tax return."