## STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CA 03-860


**GREY WOLF DRILLING COMPANY**

**VERSUS**

**WILLIAM L. ENDRIS, DIRECTOR
OF FINANCE, FOR THE SALES &
USE TAX DEPARTMENT OF THE
VERNON PARISH SCHOOL BOARD**


\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
THIRTIETH JUDICIAL DISTRICT COURT,
PARISH OF VERNON, NO. 66,345,
HONORABLE JOHN C. FORD, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*


## JIMMIE C. PETERS
## JUDGE

\*\*\*\*\*\*\*\*\*\*


Court composed of Ulysses Gene Thibodeaux, Oswald A. Decuir, and Jimmie C. Peters, Judges.

**REVERSED AND REMANDED.**



**Stephen H. Myers**
**Post Office Box 51222**
**Lafayette, LA 70505**
**(337) 266-2225**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
**     Grey Wolf Drilling Company**

**Robert R. Rainer**
**Frederick Mulhearn**
**Ranier, Anding & McLindon**
**8480 Bluebonnet Blvd, Suite D**
**Baton Rouge, LA 70810**
**(225) 766-0200**

**COUNSEL FOR DEFENDANT/APPELLANT:**
     **The Vernon Parish School Board**
     **Through its Sales And Use Tax Department**

PETERS, J.

This litigation arises from a suit by Grey Wolf Drilling Company, L.P. (Grey Wolf)[1] to recover taxes paid under protest to the Vernon Parish School Board. In its suit, Grey Wolf named as defendant the Director of Finance for the Sales and Use Tax Department of the Vernon Parish School Board (School Board). The School Board appeals rulings of the trial court that had the effect of requiring it to return the taxes paid under protest. For the following reasons, we reverse the trial court judgments and remand the matter for further proceedings consistent with this opinion.

## DISCUSSION OF THE RECORD

The Vernon Parish School Board, through its Sales and Use Tax Department, is the single collector for sales and use taxes levied by all political subdivisions within Vernon Parish, pursuant to La.Const. art. VII § 3(B). Based on the results of an audit conducted for the periods of January 1996 through December 1999, the School Board issued Grey Wolf a sales and use tax assessment totaling $117,040.44[2] on two drilling rigs, Rig 519 and Rig 521.

At the time the rigs were brought into Vernon Parish, they were owned by Grey Wolf Drilling Company, a Texas corporation. Grey Wolf Drilling Company brought Rig 519 into Vernon Parish on March 1, 1996, and removed it from the parish on July 3, 1996. It brought Rig 521 into Vernon Parish on April 26, 1997, and removed it from the parish on June 26, 1997.

---

[1] As is explained in this opinion, the actual owner of the drilling rigs that are the subject of this litigation is Grey Wolf Drilling Company, L.P., a subsidiary of Grey Wolf, Inc. All of the pleadings refer to the plaintiff as Grey Wolf Drilling Company without regard to the initials that follow. For the purposes of this opinion, we will assume that Grey Wolf Drilling Company, L.P. and Grey Wolf Drilling Company are one and the same.

[2] The record reflects that Grey Wolf paid $63,568.86 in taxes, $37,579.35 in interest, and $15,892.23 in penalties. During the course of the litigation, the School Board conceded that a portion of the assessment attributable to 1996 had prescribed, and that portion of the assessment was returned to Grey Wolf.

On June 27, 1997, Grey Wolf Drilling Company merged with Drillers, Inc., a wholly owned subsidiary of D I Industries, Inc. As a result of the merger, Grey Wolf Drilling Company ceased to exist. Drillers, Inc. then changed its name and operated under the name of Grey Wolf Holding Company. Thereafter, on October 10, 1997, D I Industries, Inc. changed its name to Grey Wolf, Inc. Thus, as of that date, Grey Wolf Holding Company became a wholly owned subsidiary of Grey Wolf, Inc. Sometime after this name change occurred, the parent company apparently formed Grey Wolf Drilling Company, L.P. which, according to the answers to the interrogatories found in the record, is the current owner of Rig 519 and Rig 521.

Both rigs were brought into Louisiana and used by Grey Wolf to explore for oil and gas. Relying on a Vernon Parish ordinance, the School Board sought to collect the use tax on the drilling rigs pursuant to a provision allowing a use tax to be imposed when things brought into the jurisdiction would have been subject to a sales tax when acquired by the owner and when no sales tax was paid. Grey Wolf paid the amount claimed by the School Board under protest and, on November 27, 2000, filed a petition against the School Board for redetermination of the taxes due and for refund of any overpayment.

The School Board reconvened against Grey Wolf, seeking the recovery of attorney fees arising from the litigation. Grey Wolf responded to the reconventional demand by filing a motion to strike the attorney fee request, asserting that because it paid the taxes under protest, an action for attorney fees did not exist. Grey Wolf later filed an exception of no cause of action, raising the same defense asserted in the motion to strike.

On July 9, 2001, Grey Wolf filed a motion for summary judgment asserting that because it acquired the rigs as a result of a merger, sales or use taxes could not be

2

imposed. Additionally, Grey Wolf asserted that, even assuming the merger did not preclude the imposition of sales or use taxes in all cases, the acquisition of the rigs in this instance constituted an isolated or occasional sale, upon which no tax should have been imposed.

The trial court considered the motion to strike and exception of no cause of action at a January 15, 2002 hearing and considered the motion for summary judgment on September 10, 2002. At the completion of each hearing, the trial court took the issues under advisement and, on February 25, 2003, filed its written reasons for judgment in the trial record granting the exception of no cause of action and the motion for summary judgment.[3] The trial court signed a judgment on April 23, 2003, granting the exception of no cause of action and the motion for summary judgment, as well as the motion to strike. The School Board appealed both judgments. Grey Wolf answered the appeal, seeking an order requiring the School Board "to immediately return the taxes paid under protest, with all interest from the date of judicial demand."

**OPINION**

The Louisiana Supreme Court discussed the law governing a motion for summary judgment in *Babin v. Winn-Dixie, Louisiana, Inc.*, 00-0078, pp. 3, 4 (La. 6/30/00), 764 So.2d 37, 39-40, as follows:

> A motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law. La.Code Civ. P. art. 966(B). This article was amended in 1996 to provide that "summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action . . . The

---

[3]The trial court issued separate written reasons for judgment on the issues raised in the two hearings. However, in doing so, the trial court did not mention disposition of the motion to strike.

3

procedure is favored and shall be construed to accomplish these ends." La.Code Civ. P. art. 966(A)(2)

Grey Wolf is both the plaintiff and the moving party in the motion for summary judgment. Thus, Grey Wolf has the burden of establishing that there is no material factual dispute and that it is entitled to judgment as a matter of law. "Once the motion for summary judgment has been properly supported by the moving party, the failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion." *Id.*

In granting the summary judgment, the trial court recognized that the School Board had the right to impose a use tax on property brought into the parish from another state if the property was subject to a sales tax when acquired by the owner in the other state. The trial court also recognized that if a sales tax could not be imposed in the state where the property was acquired, a use tax could not have been imposed by the School Board when the property arrived in Vernon Parish.

As one basis for concluding that Grey Wolf was entitled to summary judgment, the trial court concluded that the construction of a drilling rig results from a contract to build and, therefore, was not a sale wherein a sales tax could be imposed. We find this conclusion to be erroneous as La.R.S. 47:301(12) specifically includes within the definition of a sale the fabrication of tangible property.

> "Sale" means any transfer of title or possession, or both, exchange, barter, conditional or otherwise, in any manner or by any means whatsoever, of tangible personal property, for a consideration, and *includes the fabrication of tangible personal property for consumers who furnish, either directly or indirectly, the materials used in fabrication work*, and the furnishing, preparing or serving, for a consideration, of any tangible personal property consumed on the premises of the person furnishing, preparing or serving such tangible personal property. A transaction whereby the possession of property is transferred but the seller retains title as security for the payment of the price shall be deemed a sale.

4

(Emphasis added.)

The trial court also agreed with Grey Wolf's argument that the School Board was improperly attempting to tax a merger transaction, concluding that "a merger of companies does not precipitate a taxable event in the nature of a sale of assets owned by one of the merging companies." In its brief to this court, Grey Wolf asserts that when business entities merge, the merger wipes out any use tax liability in connection with property purchased prior to the merger. We disagree. Louisiana Revised Statutes 12:115(E) provides that the surviving entity is responsible for the liabilities of all businesses involved in the merger.

> *The surviving or new business, nonprofit or foreign corporation shall be responsible for all of the liabilities and obligations of each of the business, nonprofit and foreign corporations merged or consolidated*, in the same manner as if such surviving or new corporation had itself incurred such liabilities or obligations; but the liabilities of such constituent corporations or of their shareholders, members, directors or officers shall not be affected, nor shall the rights of the creditors thereof, or of any persons dealing with such corporations, be impaired by such merger or consolidation; and any claim existing, or action or proceeding pending, by or against any of such constituent corporations may be prosecuted to judgment as if such merger or consolidation had not taken place, or the surviving or new corporation may be proceeded against, or substituted, in place of such constituent corporation.

(Emphasis added.)

As previously stated, during the entire time the rigs remained in Vernon Parish, they were the property of Grey Wolf Drilling Company. The day after Grey Wolf Drilling Company removed Rig 521 from Vernon Parish, the merger process began when that company merged with Drillers, Inc. Sometime thereafter, the current owner of the rigs, Grey Wolf Drilling Company, L.P., emerged through the merger process. We need not address whether the merger activity in this litigation precipitated a taxable event because the taxable event at issue had already occurred—the acquisition

5

of the rigs by Grey Wolf Drilling Company. If, while the property of Grey Wolf Drilling Company, the rigs were subject to a use tax because of the Vernon Parish activity, the new rig owners, created through the merger process, would be responsible for that unpaid use tax as required by La.R.S. 12:115(E). Thus, the various mergers are not relevant to the primary question, which is whether the activity of Grey Wolf Drilling Company in bringing the rigs into Vernon Parish between March 1, 1996, and June 26, 1997, constituted a taxable event.

Analysis of this issue requires an examination of the pertinent provisions of the applicable tax laws. In this case, the School Board is authorized to levy sales and use tax pursuant to La.Const. art. 6 § 29(A), which provides in pertinent part:

> Sales Tax Authorized. Except as otherwise authorized in a home rule charter as provided for in Section 4 of this Article, the governing authority of any local governmental subdivision or school board may levy and collect a tax upon the sale at retail, the use, the lease or rental, the consumption, and the storage for use and consumption, of tangible personal property and on sales of services as defined by law, if approved by a majority of the electors voting thereon in an election held for that purpose.

The purpose of a sales and use tax scheme is to make all tangible personal property used or consumed within the state subject to a uniform tax burden irrespective of whether it is acquired in the state, making it subject to the sales tax, or acquired from without the state, making it subject to the use tax at the same rate. *Chicago Bridge & Iron Co. v. Cocreham*, 317 So.2d 605 (La.1975), *cert. denied*, 424 U.S. 953, 96 S.Ct. 1427 (1976).

The trial court concluded as fact that the drilling rigs were manufactured in another state. While such a fact is implied in the record, we find nothing to suggest that this is an undisputed fact. Additionally, in its answers to interrogatories propounded to it requesting tax payment information, Grey Wolf stated:

> Respondent objects to this Interrogatory on the basis that it is overly broad, ambiguous, and unduly burdensome. Nevertheless, in the spirit of cooperation and subject to the foregoing objection Rigs 519 [and 521 are] a cost center and not a single purchase. Thousands of transactions compromise the various components . . . Parts of these components are repaired or replaced on a continuous basis. Taxes have been paid on the components . . . to various authorities at various times as components are constructed, repaired or replaced. The exact number and amount can only be determined by audit. Vernon Parish assigned Revenue Recovery Group to conduct this audit.

This answer either carefully or inadvertently fails to state whether the rigs were purchased by Grey Wolf Drilling Company from another drilling company, were constructed for Grey Wolf Drilling Company by a separate entity, or were constructed by Grey Wolf Drilling Company itself. This is an unresolved genuine issue of material fact.

Additionally, while Grey Wolf asserts in its answers to the School Board's interrogatories that sales taxes were paid on materials furnished and used in the fabrication of the rigs, it does not make it clear who actually paid the sales tax. Specifically, Grey Wolf offered no evidence to establish that Grey Wolf Drilling Company paid taxes on the drilling rigs prior to the merger and prior to the use of the rigs in Vernon Parish, or that it was entitled to a credit against any use tax due for previously paid sales taxes as provided for in La.R.S. 33:2718.2. These also are unresolved genuine issues of material fact.

Given these unresolved genuine issues of material fact, we find that Grey Wolf failed to carry its burden under La.Code Civ.P. art. 966(C)(2). Therefore, we find that the trial court erred in granting Grey Wolf's motion for summary judgment. This decision and the required reversal based on this decision preclude consideration of the relief requested by Grey Wolf in its answer to the appeal.

The School Board also asserts on appeal that the trial court erred in granting the

7

exception of no cause of action on the attorney fee issue. In granting the exception of no cause of action, the trial court stated that "due process of law prohibits the taxing authority from collecting attorney's fees on taxes which were paid under protest where the taxpayer was procedurally correct in contesting the tax unless bad faith was shown on the taxpayer or additional taxes were owed." Thus, the trial court concluded that Grey Wolf followed the proper procedure in contesting the payment of taxes. Additionally, although the trial court did not specifically state such, it is clear from its ultimate decision that it found that Grey Wolf did not act in bad faith in contesting the payment of taxes. We find that the trial court erred in granting the exception of no cause of action and the motion to strike.

Louisiana Revised Statutes 47:1512 provides the statutory authority for the School Board to employ private counsel and provides that "[i]f any taxes, penalties or interest due under this title are referred to an attorney at law for collection, an additional charge for attorney fees, in the amount of ten per centum (10%) of the taxes, penalties and interest due, shall be paid by the tax debtor." This court addressed a similar issue dealing with attorney fees in *Lake Charles Memorial Hospital v. Parish of Calcasieu*, 98-519, p.6 (La.App. 3 Cir. 12/9/98), 728 So.2d 454, 457, *writ denied*, 99-0071 (La. 3/12/99), 739 So.2d 213, and it concluded that "[l]iability for these attorney fees does not depend upon whether the fees have been incurred in a collection case or in a defense of a taxpayer's suit for a refund." See also *South Cent. Bell v. Traigle,* 367 So.2d 1143 (La.1978)*; United Companies Printing Co. v. City of Baton Rouge*, 569 So.2d 186 (La. App. 1 Cir. 1990), *writ denied*, 572 So.2d 73 (La.1991). Thus, a taxing authority may collect attorney fees if it is successful in defending a taxpayer's suit for a refund. The trial court erred in concluding otherwise.

**DISPOSITION**

For the foregoing reasons, we reverse the trial court's grant of the exception of no cause of action, motion to strike, and motion for summary judgment in favor of Grey Wolf and remand the matter to the trial court for further proceedings consistent with this opinion. We tax all costs of this appeal to Grey Wolf.

**REVERSED AND REMANDED.**